IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEFFERY C. ARCHANGEL, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| CITY OF HOUSTON, TEXAS; | § | **JURY TRIAL DEMANDED** |
| DAVID J. CROWDER; and | § | |
| ALEXANDER S. VINOGRADOV | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Jeffery C. Archangel files this Complaint against Defendants, City of Houston, D. J. Crowder, and, A. S. Vinogradov (collectively, "Defendants"), and states as follows.

## INTRODUCTION

1.	In 2017, Jeffery Archangel, who has performed under the name "Skyler Jones" since recording his first rap song, was on the verge of fulfilling his life's ambition of signing a recording contract.  He was concentrating on his career and splitting his time between New York and Houston, recording, performing and networking. He had no criminal record.

2.	Jeffery Archangel's dreams were permanently derailed when egregious, but sadly predictable and common, misconduct by Houston Police Department officers A.S. Vinogradov and D.J. Crowder, consisting of falsifying two probable cause affidavits and withholding exculpatory evidence, resulted in Jeffery Archangel's wrongful arrest for crimes that he did not commit.

3.	While the Harris County District Attorney's Office ultimately dismissed the charges, the dismissal did not occur until 2022, more than 5 years later.   By then, Jeffery Archangel had

languished in the system for more than five years. He spent years in the Harris County Jail, he lost the fast-track trajectory of his professional aspirations, and he lost valuable years of his life.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 and 1988, and supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear Plaintiff's state law claims, if any.

5.      Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. §§ 1391(b) because that is the judicial district in which the claims arose and in which Defendants resided or conducted business during the relevant period herein.

## PARTIES

6.      Plaintiff Jeffery Archangel is an individual residing in Texas.  Jeffrey Archangel had no criminal record when he was wrongfully arrested and prosecuted.

7.      Defendant City of Houston, Texas is a municipality existing under the laws of the State of Texas and situated in Harris County, Texas in the Southern District of Texas and may be served with process by serving the City of Houston Secretary at 901 Bagby, Houston, Texas 77002.  The Houston Police Department (HPD) is the primary law enforcement agency for the City of Houston. It is led by a Chief of Police who reports directly to the Mayor of Houston.

8.      Defendant David J. Crowder (Employee No. 135926) is being sued in his individual capacity.  He can be served with process at 1200 Travis; Houston, Texas 77002 or wherever he may be found.  Defendant Crowder was at all relevant times employed as a police officer by the City of Houston's HPD.

9.      Defendant Alexander S. Vinogradov (Employee No. 138638) is being sued in his individual capacity. He can be served with process at 1200 Travis; Houston, Texas 77002 or wherever he may be found.   Defendant Vinogradov was at all relevant times employed as a police officer by the City of Houston's HPD.

10.     At all relevant times, Defendants Crowder and Vinogradov were detectives assigned to HPD's homicide division.   Both were acting within the course and scope of their duties and authority as employees and agents of the City of Houston, were acting under color of state law, and were acting under the customs, usages, patterns and practices of HPD.

## PROCEDURAL HISTORY

11.     On April 5, 2017, Jeffery Archangel was charged with the felony offense of aggravated robbery with a deadly weapon, trial court cause no. 1546734, in the 174th District Court of Harris County, Texas.   The offense took place at a Subway restaurant located at 4807 San Jacinto Houston, Texas, on February 22, 2017, and restaurant employee Darrion Dent was named as the complainant (hereinafter referred to as "aggravated robbery" or "San Jacinto robbery").

12.     On May 4, 2017, Jeffery Archangel was charged with the felony offense of capital murder of Javier Flores, trial court cause no. 1550214, in the 174th District Court of Harris County, Texas.   Flores was shot during a February 22, 2017 robbery at a Subway restaurant located on Broadway Street in Houston where he was working (hereinafter referred to as "capital murder" or "Broadway murder").

13.     On May 5, 2017, Jeffery Archangel surrendered himself to law enforcement.

14.     On September 16, 2022, almost five and a half years later, the Harris County District Attorney's Office dismissed both cases against Jeffery Archangel.

# FACTUAL ALLEGATIONS

**Capital Murder of Javier Flores**

15.     On the evening of February 22, 2017, a robber shot and killed store clerk Javier Flores at a Subway restaurant located on Broadway Street in Houston, where Flores was working with his mother, Hilda Vasquez.

16.     HPD Detectives Crowder and Vinogradov are listed as the first and second officers, in the investigation which was documented in police offense report no. 237607-17 ("OR No. 237607-17").

17.     Det. Vinogradov conducted a recorded interview of Hilda Vasquez at the scene.  No one else was present during the interview.  Vasquez told Vinogradov that the robbers were two young black males.  The shooter was 5'6 or 5'8, 18 to 20 years old, and dark complected.  He was wearing a dark blue, long sleeved hoodie and black pants or jeans.  He had no facial hair or tattoos.  The second robber was really little and young, 14 or 15 years old.  Vasquez said that this suspect was shorter than the first suspect, approximately 5'4 in height, and he was wearing a hoodie, a white mask, bandana or shirt, and dark pants that resembled jeans.

18.     Det. Vinogradov entered a wholly inaccurate summary of Vasquez's descriptions of the suspects in his March 11, 2017 supplement to the offense report. Even though Vasquez told Vinogradov that both suspects were young, and that the shooter was 5'6 or 5'8 and 18 to 20 years old, Vinogradov entered a description of the shooter that depicted him as older and taller than the individual that Vasquez described:

> She said that *the first male that entered the Subway was approximately 18-25 years old, 5'08 to 6'00 in height*, had a slim build, no facial hair, and had white teeth.  She said that the black male had a dark complexion

and was wearing a dark blue hooodie and black pants. She added that the male had a black semi-automatic pistol in his hand. She said that the second black male appeared to be young and was approximately 15-18 years old. She added that he was wearing a light blue hoodie, a white bandana or t-shirt over his mouth, and dark pants. She said that the male was shorter than the first male with the pistol.

*OR No. 237607-17, Supplement 14, reported date March 11, 2017.*

19.     In Det. Vinogradov's offense report supplement 14, which was dated March 11, 2017, he

included the following summary descriptions of the persons wanted in the Flores capital murder:

<u>#1 Possible suspect</u>:
- Black male
- 5'8-6'01 Feet Tall
- Dark skinned
- White teeth
- Clean Shaven
- Approximately 18-25 years old
- Slim build (approximately 180 pounds)
- Blue hoodie with "We Are a B16 (BIG) Deal Class of 2016" writing in white and yellow
- Dark jeans
- Black shoes
- Possibly armed with a stolen .45 Caliber Springfield Armory semi-automatic pistol (Model #XDS45ACP; S/nN#X5607610; HPD Report #0006226-17)

<u>#2 Possible suspect</u>:
- Black male
- 5'5-5'08 Feet Tall
- Dark skinned
- Approximately 15-18 years old
- Slim build
- Black California Republic hoodie with white lettering and a white bear drawing
- Light Blue shorts
- Black shoes
- White face mask (t-shirt or dust mask)
- Possibly armed with a stolen .45 Caliber Springfield Armory semi-automatic pistol (Model #XDS45ACP; S/nN#X5607610; HPD Report #0006226-17.). Pistol has a possible laser pointer mounted to the weapon.

20.    Police recovered a fired .45 cartridge casing and fired bullet at the scene and determined that the suspects were driving an older, light-colored, four door Mazda Protégé sedan.

21.    Additionally, police learned that the suspects had committed another robbery at a Subway restaurant located nearby, at 4807 San Jacinto, shortly after Flores' murder.

**Subsequent Subway Robbery**

22.    HPD's investigation of the 4807 San Jacinto robbery was summarized in police offense report 237725-17 ("OR 237725-17").

23.    At the scene, HPD Officer O.R. Manzano interviewed complainant store clerk Darrion Dent, who was working at the Subway when the two suspects robbed him at gun point. Manzano's body worn camera ("BWC") recorded Dent's interview.   Dent described the two robbers as really skinny and young, probably juveniles 16 or 17 years old.   One of the suspects was a light skinned black male, approximately 4'11 in height, with dark brown eyes.   This suspect wore a black hoodie, shorts and a white mask similar to those obtained at hospitals.   Dent could not see the face of the shorter suspect.   Dent described the second suspect, who was also a black male, as skinny and taller than the first suspect, 5'5 or 5'6.   He said that this suspect had fairly dark skin and that he wore pants, a black hoodie, and a black scarf on his face.   Dent did not see the second suspect's hair.

24.    Officer Manzano documented his interview with Dent concerning the appearances of the suspects in the offense report:

> Mr. Dent stated the suspect that had the gun was 4'11 b/m, skinny, light brown, wore a white dust mask, black hoodie, dark colored shorts, dark

brown eyes. He stated both suspects had their hoodies on, covering their head. The second suspect was 5'5, b/m, skinny, wore a dark colored scarf to hide his face with a possible scar on his the left side of his face, black hoodie, dark pants.

*OR 237725-17, reported date February 22, 2017.*

25.     The following images were capture of the suspects during the San Jacinto robbery:



HPD  #023760717

26.     On March 8, 2017, HPD Officer G. L. Goodnight contacted Dent.  The offense report provides no detail of Goodnight's interview of Dent, and apparently Goodnight neglected to

record the interview.  The offense report simply states that "Mr. Dent and I discussed this case. Mr. Dent gave a statement, which was consistent with his statement as recorded by responding officer." *OR 237725-17, Supplement 2, reported date May 6, 2017.*

27.    Goodnight also determined that Dent was not wanted by the police and had no criminal history.

**Anonymous Tip Naming Derrick Welch, Jr. as Murder Suspect**

28.    On March 24, 2017, Detectives Vinogradov and Crowder reviewed Crime Stoppers tips on the Javier Flores capital murder case.  The offense report supplement states that "one of the tips stated that the shooter in the case went by the name of Derrick Welch Junior and that he was in the 12th grade at Elkins High School.  We also noted that the second suspect was listed only by the nickname of "Little Joe" and an address of only "Botany St" in Houston Texas was provided." *OR 237607--17, Supplement 51, reported August 1, 2017.*

29.    At that time, Welch (DOB 6/28/1998) was 18 years old, 5'10 tall, and weighed 140 pounds.  Welch had numerous ties to law enforcement.  His mother was an informant for HPD, and she had relatives who were HPD employees.   Welch was killed in a gang shootout in February 2018.

30.    "Little Joe" was likely Welch's friend, Joe Nathan Vann, who lived at 4206 Botany Lane in Houston.  Vann would have been 17 years old at the time of the February 22, 2017 offenses. According to information collected in 2018 when he was arrested on a separate felony offense, Vann was 5'6 and weighed 120 pounds.

31.    In contrast, at the time, Jeffery Archangel was 25 years old and much taller and heavier than the suspects whose images were captured by video during the San Jacinto Subway robbery. Photos of Jeffery Archangel at the time of his arrests are included later in this complaint.

**Police Encounter Welch at Spice Lane Apartment**

32.    Detectives Vinogradov and Crowder followed up on the tip implicating Welch and determined that he was in a dating relationship with Eryka Valentine who lived at an apartment at 10027 Spice Lane, #2004, in Houston.

33.    Eryka Valentine is Jeffery Archangel's sister.

34.    On March 24, 2017, Det. Vinogradov directed a patrol officer to drive over to the Spice Lane apartment complex to look for the Mazda Protégé used in the February 22, 2017 offenses. At the complex, the patrol officer observed a parked tan Mazda Protégé that matched the description of the vehicle used by the suspects, and the apartment manager told the officer that the Mazda Protégé belonged to the residents in apartment 2004.

35.    Detectives Vinogradov and Crowder, along with other HPD officers approached apartment 2004, and the detectives knocked on the door.   Welch answered the door, and detectives recognized him from social media photos.   Detectives entered the apartment, and Welch said that his girlfriend was in the apartment.   Det. Vinogradov asked if Welch's girlfriend was named Eryka.   Welch said "yes", and Vinogradov crudely remarked, "Yeah, let me fuck her".

36.    A Springfield Armory XDS .45 handgun with a laser was found sitting on a table in the apartment's living room.  A search warrant was obtained, and the handgun was seized.

37.     Also in the apartment, officers found a Texas identification card belonging to Jeffery Archangel on a blow-up mattress next to the living room table. *OR 237607-17, Supplement No. 51, Reported date August 1, 2017.*

38.     Welch and Valentine were detained, interviewed, and then released.

39.     During his interview, Welch denied ownership of the .45 caliber handgun and said that he did not know who the gun belonged to. Welch self-servingly stated that the composite sketch prepared of the shooter in the Flores capital murder possibly looked like Jeffery Archangel, but he was not sure. *OR 237607-17, Supplement No. 51, Reported date August 1, 2017.*

40.     Testing linked the handgun found at the apartment to the ballistics evidence recovered at the capital murder scene.

**Misrepresentation of Dent's Identification of Jeffery Archangel in Photospread**

*-HPD's policies concerning identification procedures*

41.     HPD's operations manual provides various alternative identification procedures: officers may conduct a live lineup where individuals are presented to a witness; a mock lineup, where the lineup is video recorded and witnesses are not present; or a photospread. *General Order 700-09, Houston Police Department, Photographs and Lineup Identification Procedures, Issued May 9, 2019 (found at Houstontx.gov).*

42.     HPD policy further dictates that photos used in a photospread should be "reasonably contemporary", and that a photo spread may be video or audio recorded. Further, when participating in a viewing, the witness should not look for guidance from the administrator, and the administrator is prohibited from providing feedback to the witness regarding a selection or

non-selection.   *General Order 700-09, Houston Police Department, Photographs and Lineup Identification Procedures, Issued May 9, 2019 (found at Houstontx.gov).*

43.     Detectives Vinogradov and Crowder violated a number of HPD policies in the identification procedures that they employed in Jeffery Archangel's cases.

44.     Rather than employ a lineup where Dent could have seen Jeffery Archangel as he physically appeared in 2017, Vinogradov and Crowder chose to use a photospread that included a six-year-old Texas identification card picture of Jeffery Archangel, when his physical appearance and age were more consistent with the suspects described by Vasquez and Dent.   The lineup array shown to Dent is replicated below.  Jeffery Archangel's 2011 picture is circled in the upper right.



45.     Detectives Vinogradov and Crowder's choice to use the six-year-old photo in the photospread is an example of police misconduct. When the six-pack was compiled, a recent

photo of Jeffery Archangel could have been obtained online. Alternatively, the detectives could have included Jeffery Archangel in a live or video lineup that witnesses could then view. The photos below were captured from police body cams when Jeffery Archangel was arrested less than a month later.



46.     The following are Jeffery Archangel's 2017 booking photos.



47.     On March 29, 2017, Detectives Vinogradov and Crowder showed Dent the photospread containing the six-year-old photo of Jeffery Archangel.

48.     Dent's viewing of the photospread was neither videotaped nor recorded by Detectives Vinogradov or Crowder.

49.     Det. Vinogradov misrepresented the results of Dent's viewing of the photospread in the offense report.  Vinogradov's supplement falsely states that Dent made a positive identification of Jeffery Archangel, quoting Dent as saying that he was "100% sure" that Jeffery Archangel, as depicted in the photo array, was the "guy that forced [Dent] to give him the money."  *OR 237607-17, Supplement No. 51, Reported date August 1, 2017.*

50.     In actuality, Dent never made a positive identification of Jeffery Archangel from the photospread that Detectives Vinogradov and Crowder showed him, a fact that the defense did not learn until 2022, when Dent told a defense investigator. Prosecutors notes taken in March and September 2022 confirm that Dent did not make a positive identification.  According to the notes of a March 2, 2022 conversation between the Harris County DA's office and Dent, Dent told the prosecutor that "his face was never shown, he was wearing a mask.  Never saw all of his face." Dent also said that "they" kept hounding him and told him to pick someone closest to it, so he picked someone at random.

51.     Notes released to the defense on September 6, 2022, reflect the following summary of a anther prosecutor's telephone conversation with Dent:

> -will not be in Houston on the 23rd
>
> -not living in Houston
>
> -heard detectives went to job

-can't identify any of the suspects – didn't see face in the first place and pressured

-told to pick the closest and picked him

-asked about the scar and didn't stand out and not the reason said they didn't look like them;

-said it would be a waste of time to do so because can't identify anyone and didn't pick out the person;

-didn't know which one to pick and pick out the one that looks most like him according to Dent.

**Jeffery Archangel Charged on Aggravated Robbery**

52.     On April 5, 2017, Det. Vinogradov spoke with a Harris County prosecutor who accepted aggravated robbery charges against Jeffery Archangel based on Vinogradov's representations as to probable cause.   Notably, Vinogradov's probable cause affidavit contained the following misrepresentation:

> Affiant received information that Defendant Jeffery Archangel was a possible suspect, and placed Defendant is a 6 person photo spread.  Upon a blinded manner showing to complainant Dent, *he positively identified Defendant* as one of the suspects involved in the aggravated robbery.

(emphasis added).

53.     On April 8, 2017, police detained and interviewed Jeffery Archangel.   Jeffery Archangel denied involvement in both offenses and told police that Welch and another unknown individual committed the Flores capital murder.   Jeffery Archangel also denied that the .45 caliber handgun

found at the apartment belonged to him.  Jeffery Archangel was then arrested and booked into the Harris County Jail.

**Welch's Mother Revealed Herself as HPD Informant**

54.    On May 4, 2017, Detectives Vinogradov and Crowder conducted a second interview with Welch. During this meeting, Vinogradov acknowledged knowing that a relative of Welch's mother worked at HPD.  Welch's mother also told the detectives that she was an informant for HPD and that she had more than one relative that was an officer at HPD.

**Police Misconduct Results in Capital Murder Charges**

55.    Also, on May 4, 2017, the Harris County District Attorney's Office accepted capital murder charges against Jeffery Archangel based on Det. Crowder's probable cause statement which was riddled with inaccuracies and omissions tailored to create probable cause as to Jeffery Archangel.  For instance, rather than including Hilda Vasquez's full description of the suspects, Crowder's probable cause affidavit merely stated that "Vasquez described the two suspects as black males wearing hoodies and that one of the suspects wore a mask."

56.    Even more problematically, Det. Crowder's probable cause affidavit misrepresented what transpired when Dent viewed the photospread containing Jeffery Archangel six-year-old Texas identification photograph, stating:

> Affiant met with … Darrion Dent, who affiant believes to be a reliable and credible person, who, when shown a six-person photograph array containing [Plaintiff's] picture along with five black males of similar appearance, identified [Plaintiff] as the unmasked suspect who was wearing the dark blue hoodie and the dark "skinny" pants.

**Jeffery Archangel Continued to Proclaim Innocence and Provided Exculpatory Evidence**

57.    On May 5, 2017, Jeffery Archangel surrendered himself to law enforcement.    In subsequent interviews, he continued to deny involvement in the charged offenses. Jeffery Archangel told detectives about a recording that his friend, Kendell Pitchford, made of Welch confessing that he was the shooter, and Jeffery Archangel identified Welch's friend, Joe Vann, as the second suspect.

58.    Pitchford met with investigating officers and provided them with a copy of Welch's recorded confession.

59.    Further, Eryka Valentine told investigators that Welch was the actual shooter.

**Pattern of Untimely Release of Discovery**

60.    Jeffery Archangel was damaged by the City's delayed release of evidence, including *Brady* material, because it delayed dismissal of the charges against him for more than 5 years.

61.    Trial counsel made a number of demands for discovery in Jeffery Archangel's cases. Article 39.14 of the Texas Code of Criminal Procedure imposes a duty on the prosecution to produce discovery "as soon as practicable after receiving a timely request from the defendant." The Court of Criminal Appeals has held that items in the possession, control or custody of "the state," includes items possessed by law enforcement.  *State v. Heath*, No. PD-0156-22, 2024 WL 2952387, *9 (Tex. Crim. App. June 12, 2024).  As as result, it is the policy of the Harris County District Attorney's Office to immediately request all evidence from HPD, including body worn camera footage and recordings of interview.

62.    HPD's failure to adequately train its officers at the time to comply with requests for evidence from the Harris County District Attorney's Office was well known and led to the adoption of a general order in place mandating that employees comply with the *Brady* disclosure

requirements set forth in Article 39.14. *General Order 500-10, Houston Police Department, Brady/Michael Morton Act Disclosure Requirements, Issued Nov. 4, 2019 (found at Houstontx.gov).*

63.     For instance, in August 2020, Jeffery Archangel's defense team had still not received the audio recording of Hilda Vasquez's interview with Det. Vinogradov where she described the suspects.  Thus, Jeffery Archangel had already spent three years in jail before Det. Vinogradov's inaccuracies in the offense report concerning Vasquez's descriptions of the suspects were revealed.

64.     Jeffery Archangel had been in jail for four years before Officer Manzano's initial interview with Dent at the scene where Dent described the suspects was released to the defense.

65.     Not until 2022, did the prosecution release notes of their conversations with Dent which documented his inability to identify Jeffery Archangel in the photospread and verified that Det. Vinogradov misrepresented the results of his identification in the offense report.

**True Basis for Dismissal Concealed**

66.     As referenced above, the Harris County District Attorney's Office dismissed the two cases, almost five and a half years after prosecution commenced.  As a final injustice, the dismissal forms cited "missing witness" as the basis for the dismissals rather than acknowledging the misconduct that prevailed throughout Jeffery Archangel's cases.

<u>**CAUSES OF ACTION**</u>

**PLAINTIFF'S FIRST CAUSE OF ACTION**
**ALEXANDER S. VINOGRADOV**
**42 U.S.C. § 1983 – Unlawful Search and Seizure – No Probable Cause**

67.     Jeffery Archangel incorporates all preceding paragraphs by reference herein.

68.     On April 5, 2017, while acting under color of Texas law, Det. Alexander S. Vinogradov deprived Jeffrey Archangel or caused him to be deprived of his rights under the Fourth Amendment as incorporated and applied to the states through the Fourteenth Amendment as follows:

   A.  Det. Vinogradov knowingly prepared a probable cause affidavit in support of an Aggravated Robbery complaint charging Jeffery Archangel with the San Jacinto Robbery that contained materially false statements;

   B.  Det. Vinogradov swore under oath to the truthfulness of the contents of his probable cause affidavit; and

   C.   Det. Vinogradov knowingly presented his probable cause affidavit to the Harris District Attorney's Office knowing that a warrant for the arrest of Jeffery Archangel would be and was issued on the basis of his false affidavit.

69.     No warrant would have been issued had the Harris County prosecutor who accepted criminal charges on Jeffery Archangel known that Det. Vinogradov's probable cause affidavit was false because, but for Vinogradov's misrepresentations there was no probable cause upon which to accept charges and for the issuance of the arrest warrant.

70.     Moreover, absent Det. Vinogradov's misrepresentations in his affidavit, there would have been no judicial probable cause approval for Jeffery Archangel's arrest.

71.     At all times relevant to this Complaint, Det. Vinogradov was a duly sworn and licensed police officer employed by the City of Houston in the Houston Police Department acting under color of law within the scope of his employment.

72. Det. Vinogradov's actions were a proximate cause and cause-in fact of Jeffery Archangel's injuries.

73. Det. Vinogradov's actions were motivated by malice and/or involved reckless and callous indifference to Jeffery Archangel's constitutional rights. Vinogradov engaged in this conduct intentionally, willfully, and wantonly, and with deliberate indifference to, and reckless disregard for, Jeffery Archangel's constitutional rights.

74. At the time of Det. Vinogradov's actions described herein, no reasonable officer with the same information could have believed that his actions were lawful in light of clearly established law. Therefore, Vinogradov is not entitled to qualified immunity.

**PLAINTIFF'S SECOND CAUSE OF ACTION**
**DAVID J. CROWDER**
**42 U.S.C. §1983 – Unlawful Search and Seizure – No Probable Cause**

75. Jeffery Archangel incorporates all preceding paragraphs by reference herein.

76. On April 5, 2017, while acting under color of Texas law, Det. David J. Crowder deprived Jeffrey Archangel or caused him to be deprived of his rights under the Fourth Amendment as incorporated and applied to the states through the Fourteenth Amendment as follows:

A. Det. Crowder knowingly prepared a probable cause affidavit in support of a complaint charging Jeffery Archangel with Javier Flores' Capital Murder that contained materially false statements;

B. Det. Crowder swore under oath to the truthfulness of the contents of his probable cause affidavit; and

C. Det. Crowder knowingly presented that affidavit to the Harris District Attorney's Office knowing that a warrant for the arrest of Jeffery Archangel would be and was issued on the basis of his false affidavit.

77. No warrant would have been issued had the prosecutor who accepted the Capital Murder charges on Jeffery Archangel known that Det. Crowder's affidavit was false because, but for Crowder's misrepresentations there was no probable cause for the complaint or for the issuance of the arrest warrant.

78. Moreover, absent Det. Crowder's misrepresentations in his probable cause affidavit, there would have been no judicial probable cause approval for Jeffery Archangel's arrest.

79. At all times relevant to this Complaint, Det. Crowder was a duly sworn and licensed police officer employed by the City of Houston in the Houston Police Department acting under color of law within the scope of his employment.

80. Det. Crowder's actions were a proximate cause and cause-in fact of Jeffrey Archangel's injuries.

81. Det. Crowder's actions were motivated by malice and/or involved reckless and callous indifference to Jeffrey Archangel's constitutional rights. Crowder engaged in this conduct intentionally, willfully, and wantonly, and with deliberate indifference to, and reckless disregard for, Jeffrey Archangel's constitutional rights.

82. At the time of Det. Crowder's actions described herein, no reasonable officer with the same information could have believed that his actions were lawful in light of clearly established law. Therefore, Crowder is not entitled to qualified immunity.

## PLAINTIFFS' THIRD CAUSE OF ACTION
## CITY OF HOUSTON
### 42 U.S.C. §1983 – Municipal Liability – Policy, Custom or Practice

83.     Jeffrey Archangel hereby incorporates by reference those allegations made in the preceding paragraphs.

84.     The City of Houston has created and tolerated an atmosphere of lawlessness and has developed and maintained longstanding, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Jeffrey Archangel and of the public.

85.     The customs, policies, and procedures of mishandling of evidence by the Houston Police Department were rampant for decades. For example, in 2005, 280 mislabeled boxes containing evidence previously thought lost were found in the Houston police property room. The evidence dated back to the 1970s, some of it dealing with 28 capital murder cases. The mixup came at a time when the department was reeling from irregularities at its crime laboratory.

86.     In 2009, the Chief of Police described the century-old former awning factory that had been Houston's police property room for more than 30 years as a "nightmare."

86.     As against the City of Houston, its policies, customs, and practices regarding the hiring of its officers, the training and supervision of its officers, the handling and testing of evidence, its investigative techniques, its record keeping and documentation of evidence, and other aspects of its investigations and prosecutions during the time in which Jeffrey Archangel was charged all contributed to this injustice. The City was either actually aware of or deliberately indifferent to the known or obvious consequences of its policies, customs, and practices.

87.     In light of the duties and responsibilities of those police officers that participate in arrests, preparation of police reports, and subsequent investigations of alleged crimes, the need for additional training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein, that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

88.     The deliberately indifferent and/or non-existent training and supervision provided by the Houston Police Department resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to the Houston Police Department and were moving forces in the constitutional and federal violation injuries suffered by Jeffrey Archangel.

89. The City of Houston also failed to train its employees concerning *Brady* obligations. TDCAA's report, *Setting The Record Straight on Prosecutorial Misconduct*, states that "few law enforcement agencies have adopted written procedures or policies to insure compliance with Brady." TDCAA, *Setting the Record Straight on Prosecutorial Misconduct*, September 12, 2012.

90.      The TDCAA report also stated that *Brady* compliance was not taught as part of the Texas Commission on Law Enforcement ("TCLEOSE") mandated 40-hour curriculum that must be completed by certified peace officers every two years.

91.     The lack of *Brady* training was a concern to TDCAA, which "highlights the need for a greater appreciation of *Brady* obligations among law enforcement officers, better coordination between prosecutors and investigating officers, and more thorough trial preparation by prosecutors." *Id*.

92.     The issues noted by TDCAA demonstrate the City of Houston's training failures. Jeffrey Archangel has been damaged as a proximate result of the City of Houston's policies and customs to employ police officers who were inadequately trained and supervised with respect to fundamental investigative techniques and their duty to disclose all material exculpatory and impeachment evidence.

## PLAINTIFFS' FOURTH CAUSE OF ACTION
## CITY OF HOUSTON
### 42 U.S.C. §1983 – Municipal Liability – Supervisory Liability Claim

93.     Jeffrey Archangel hereby incorporates by reference those allegations made in the preceding paragraphs.

94.     Defendant supervisors in the Houston Police Department, collectively, failed to adequately train and supervise Defendants Vinogradov and Crowder, and other individuals employed by the City of Houston, with respect to fundamental investigative techniques and duties, including the duty to avoid coaching witnesses, the duty to disclose manipulation of witness recollections, the duty to disclose material exculpatory and impeachment evidence to prosecutors and defense counsel, proper methods of securing evidence, and proper methods of locating suspects and pursuing known and exculpatory leads.

95.     Defendant City of Houston failed adequately to train and supervise Defendants Vinogradov and Crowder and others who were employed by the City of Houston, with deliberate indifference to the known and obvious consequences that deprivations of due process would result.

96.     As a direct and proximate result of City of Houston's failure to supervise Defendants Vinogradov and Crowder and others who were employed by the City of Houston, Jeffrey

Archangel was denied due process when these individuals engaged in the conduct set forth herein.

97.     As a proximate result of the actions of Defendant City of Houston, Jeffrey Archangel sustained substantial compensatory and economic damages.

## DAMAGES

98.     As a result of Defendants' conduct, Plaintiff Jeffery Archangel has suffered substantial compensatory and economic damages, including but not limited to, lost income, deprivation of liberty, and past and future mental anguish.

99.     Jeffery Archangel is also entitled to punitive damages against any Defendants in any capacity where punitive damages are allowed by law.

100.    Jeffery Archangel requests attorney's fees and costs under 42 U.S.C. Section 1988 for all Title 42 federal claims that are successfully resolved.

## JURY DEMAND

101.    Pursuant to Federal Rule of Civil Procedure 38(b), Jeffery Archangel demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on his behalf and against Defendants for:

A.     Compensatory damages;

B.     Punitive damages;

C.     Past and future pain, suffering, and mental anguish;

D.     Pre-and post-judgment interest;

E.     Reasonable attorneys' fees and costs incurred in bringing this action, including expert fees, pursuant to 42 U.S.C. Section 1988; and

F.     Grant such other and further relief as appears reasonable and just, to which, Plaintiff shows himself entitled.

Dates:  September 13, 2024                    Respectfully submitted,

                                              **Reynal Law Firm, PC**

                                              /s/F. Andino Reynal
                                              F. Andino Reynal
                                              State Bar No. 24060482
                                              917 Franklin, 6th Floor
                                              Houston, Texas 77002
                                              Phone:  713.228.5900
                                              Facsimile: (713) 820-0681
                                              areynal@frlaw.us

                                              *Counsel for Jeffery C. Archangel*