UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEFFERY C. ARCHANGEL, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:24-cv-03436 |
| | § | |
| CITY OF HOUSTON, TEXAS; | § | |
| DAVID J. CROWDER; and | § | |
| ALEXANDER S. VINOGRADOV, | § | |
| *Defendants.* | § | |

## DEFENDANT CITY OF HOUSTON'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6), FED. R. CIV. P.

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Comes now Defendant, the City of Houston ("the City"), and files this Motion to Dismiss the First Amended Complaint of Plaintiff, Jeffery C. Archangel [Doc. #18], pursuant to Fed. Civ. P. Rule 12(b)(6) for failure to state a claim upon which relief may be granted, respectfully showing the following in support:

### NATURE AND STAGE OF PROCEEDING

Plaintiff brought this action on September 13, 2024, asserting claims under 42 U.S.C. Section 1983 against the City of Houston and Detectives Crowder and Vinogradov of the Houston Police Department. Doc. #1. The City moved to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted and Rule 12(b)(1) for lack of subject matter jurisdiction. Docs. #9, #10. Plaintiff was granted leave to file his First Amended Complaint on December 10, 2024. Docs. #24; #18. The City moves to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDING ........................................................................i

TABLE OF CONTENTS ...............................................................................................ii

ISSUES PRESENTED ..................................................................................................1

STANDARD OF REVIEW .............................................................................................1

SUMMARY OF THE ARGUMENT ..................................................................................2

ARGUMENT AND AUTHORITIES .................................................................................3

I.  Plaintiff's claims stemming from his 2017 arrest are barred by limitations..................3

II. Plaintiff fails to plausibly allege a claim against the City under Section 1983. .........4

    A.  Plaintiff fails to plausibly establish an official City policy that was the moving force behind an alleged constitutional violation. .................................................................5

    B.  Plaintiff fails to plausibly establish an unconstitutional City custom, widespread practice, or failure to train or supervise claim.................................................................7

III.      Plaintiff fails to plausibly establish a constitutional violation to support a Section 1983 claim.....10

    A.  Plaintiff fails to state a cognizable Due Process violation.............................................10

        (1)  Plaintiff's claims involve pretrial liberty deprivations which must be analyzed under the Fourth and not the Fourteenth Amendment.......................................10

        (2)  *Brady* is neither a pretrial remedy nor one that can be violated by an officer who neither tried nor convicted the Plaintiff. .......................................................11

        (3)  Allegedly deficient investigation techniques or record keeping do not implicate any constitutional right of the Plaintiff's. .........................................................13

    B.  Plaintiff fails to plausibly establish a Fourth Amendment violation. ..........................14

        (1)  Plaintiff's arrest pursuant to a valid warrant is simply not a false arrest and barred by the independent intermediary doctrine.  .......................................................14

          a.  Alleged inaccurate summary of Hilda Vasquez's interview....................................15

          b.  Alleged fabrication of photo-identification based on witness's hesitation or inability to identify Plaintiff five years after the arrest. .............................17

          c.  Accomplice's post-arrest purported confession cannot retroactively alter probable cause and is immaterial under Texas law...............................................................18

        (2)  Plaintiff cannot overcome the additional, independent intermediaries that found probable cause after his arrest. .......................................................................19

IV.      Punitive Damages are not available against the City. ....................................................20

CONCLUSION AND PRAYER......................................................................................20

VERIFICATION..........................................................................................................21

CERTIFICATE OF SERVICE.......................................................................................21

## ISSUES PRESENTED

1.     Plaintiff's claims are barred by the statute of limitations.

2.     Plaintiff fails to state a municipal or supervisory liability claim against the City under section 1983.

3.     Plaintiff fails to plausibly allege a constitutional violation to support a section 1983 claim.

4.     Punitive damages are not available against the City.

## STANDARD OF REVIEW

A complaint may be dismissed as a matter of law if it fails to state a claim upon which relief can be granted *See* Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint and construes them in light most favorable to the plaintiff."  *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).  However, courts are not bound to accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statement," or legal conclusions couched as factual assertions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Dismissal is therefore appropriate if the complaint lacks an allegation regarding a required element necessary to obtain relief.  *Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 624 (5th Cir. 2001) (quoting *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).

In reviewing a motion to dismiss, a district court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[1]  The City moves for the Court to take judicial notice of judicial and public records attached as Exhibits 1 through 14.  When deciding a motion to dismiss a district court may "consider

---

[1] *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citations omitted); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996) (citing FED. R. EVID. 201(f)).

matters of which they may take judicial notice." *Id.*   FED. R. EVID. 201(b).   *Funk*, 631 F.3d at 783.   The court *must* take notice of a fact if "a party requests it and the court is supplied with the necessary information." FED. R. EVID. 201(c)(2).   The Court should consider documents attached to the Defendant's motion that are attached to the First Amended Complaint and central to the Plaintiff's claims, including the judicial records, probable cause affidavits, offense reports attached to the complaint, videos, and the witness interview recordings selectively quoted and referenced throughout the complaint.[2]   Exhibits 12, 13, 14, 15.

## SUMMARY OF THE ARGUMENT

Any false arrest claim accrued shortly after Plaintiff's arrest in 2017 and is not subject to the *Heck* doctrine.   This action, filed more than two years later in 2024, is barred by statute of limitations.

Plaintiff's allegations of delayed *Brady* disclosures by the Harris County prosecutors cannot be attributed to the City.   The allegations are disproved by the pleadings and even if true, do not support a cognizable Due Process claim as *Brady* is not a pretrial remedy.   Plaintiff was not tried and convicted without having received *Brady* information to implicate any due process interest.   Plaintiff's claim of, at most, negligent investigation or record keeping do not implicate the violation of any constitutionally guaranteed right.

Plaintiff's allegations concern pretrial deprivations of liberty that must be analyzed under the Fourth and not the Fourteenth Amendment.   Plaintiff's arrest pursuant to a valid warrant was lawful as a matter of law.   Multiple intermediaries independently found probable cause for Aggravated Robbery with a Deadly Weapon and Capital Murder both before and after the arrest, breaking the chain of causation and defeating Plaintiff's claims.

The complaint fails to establish any unconstitutional City policy, custom, widespread practice,

---

[2] *See Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 F. App'x 336, 340-41 (5th Cir. 2011) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 n. 10 (5th Cir. 2007)); *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Harvey v. Montgomery Cty.*, 881 F. Supp. 2d 785, 802 n.1 (S.D. Tex. 2012) (taking judicial notice of police dispatch report on a Rule 12(b)(6) review).

failure to train or supervise that was the moving force behind an alleged deprivation of rights. Plaintiff did not have a right to either a recorded photo lineup or for officers to find a more recent photo by searching online. Plaintiff neither identifies a delayed disclosure of exculpatory evidence by the City or its employees nor the requisite police or widespread practice behind it. The City is not subject to punitive damages.

## ARGUMENT AND AUTHORITIES

**I.**    **Plaintiff's claims stemming from his 2017 arrest are barred by limitations.**

A statute of limitations defense may support dismissal under Rule 12(b)(6) where it is evident from the plaintiffs' pleadings that the action is time barred and the pleadings fail to raise some basis for tolling. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003), cert. denied, 540 U.S. 1161 (2004). But a plaintiff must allege specific facts to support all prongs of a plausible equitable tolling claim. *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014))).

A civil rights action under 42 U.S.C. § 1983 is governed by a two-year statute of limitations. *See Owens v. Okure*, 488 U.S. 235, 250 (1989); *Ali v. Higgs*, 892 F.2d 438, 439 (5th Cir. 1990). "Although state law sets out the limitations period, federal law determines when the cause of action accrues." *Powell v. Wagner*, 2018 WL 9439864, at *2 (S.D. Tex. July 31, 2018) (citing *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989)). The "statute of limitations upon a §1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384 (2007). A bond hearing is sufficient legal process to start the statute of limitations for false arrest claims. *See Reed v. Edwards*, 487 F. App'x 904, 906 (5th Cir. 2012); *Terry v. Hubert*, 609 F.3d at 757, 763 (5th Cir. 2010). "The existence of an injury for false arrest or false imprisonment does not depend on the outcome of any subsequent criminal proceedings." *Powell*, WL 9439864, at *2 (citing *Wallace*, 549 U.S. at 387).

Plaintiff's claims concern pretrial deprivations of liberty that accrued on April 8, 2017, when he was arrested pursuant to an arrest warrant, or April 9, 2017, at the latest, when probable cause was found

for his continued detention for aggravated robbery with a deadly weapon.  *See* Exhibit 6 at 2, 9; Exhibit 8

at 23; Exhibits 7 and 10.  Unlike claims stemming from a prosecution or conviction, these claims are not

subject to the *Heck* doctrine because a valid conviction may follow an illegal arrest.  *See Mackey v.*

*Dickson,* 47 F.3d 744, 746 (5th Cir. 1995) (a successful § 1983 unlawful arrest action does not necessarily

imply the invalidity of an underlying conviction).  *See also Brown v. Edwards,* 721 F.2d 1442, 1448 (5th

Cir. 1984).  This action brought on September 13, 2024, more than six years after claims accrued, is barred

by statute of limitations and must be dismissed.

## II.   Plaintiff fails to plausibly allege a claim against the City under Section 1983.

To allege a plausible claim under Section 1983 against a municipality, "a plaintiff must show that

(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the

violation of a constitutional right."  *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).  There

are three ways to establish a municipal policy for Section 1983 liability:

> First, a plaintiff can show written policy statements, ordinances, or regulations. Second, a
> plaintiff can show a widespread practice that is so common and well-settled as to constitute a
> custom that fairly represents municipal policy. Third, even a single decision may constitute
> municipal policy in rare circumstances when the official or entity possessing final
> policymaking authority for an action performs the specific act that forms the basis of the
> Section 1983 claim.

*Webb v. Town of Saint Joseph*, 925 F.3d 209, 214-215 (5th Cir. 2019) (quotation marks and citations

omitted).  Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable

for an isolated unconstitutional act on the part of an employee."  *Id.* at 692.  *See also Peterson v. City of*

*Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).  When challenged in a 12(b)(6) context, the plaintiff "must

do more than describe the incident that gave rise to his injury."  *Ratliff v. Aransas Cty., Texas*, 948 F.3d

281, 285 (5th Cir. 2020) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)).  In

addition, "[t]he description of a policy or custom and its relationship to the underlying constitutional

violation . . . cannot be conclusory; it must contain specific facts."  *Spiller v. City of Texas City*, 130 F.3d

4

162, 167 (5th Cir. 1997).

A.    **Plaintiff fails to plausibly establish an official City policy that was the moving force behind an alleged constitutional violation.**

Plaintiff's claims against the City are supported by mere labels and conclusions. He claims the City maintained or developed "customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Jeffery Archangel and of the public." *Id.* at ¶94. The complaint is devoid of any facts establishing an unconstitutional policy, custom or practice, or linking these conclusory allegations to any violation of Plaintiff's constitutional rights. Doc. #18 at ¶¶94, 95. The pleadings assert the City is liable based on "policy, custom or practice," and "supervisory liability," regarding the hiring, training and supervision of its officers, its investigative techniques, record keeping and documentation of evidence, which "contributed to this injustice." Doc. #18 at 104-106, 111. The complaint is devoid of any facts, however, establishing an unconstitutional policy, custom or practice, or linking these conclusory allegations to any violation of Plaintiff's constitutional rights. Although he claims "lawlessness" and "misconduct," Plaintiff has not pled any facts beyond opinions of what amounts to mere negligence.

Plaintiff cites two HPD general orders that have nothing to do with any alleged violation of his federal statutory or constitutional rights, and claims that officers violated these policies. First, Plaintiff claims that *General Order 500-10, Houston Police Department, Brady/Michael Morton Act Disclosure Requirements, Issued Nov. 4, 2019 (found at Houstontx.gov),* was enacted in 2019 as a result of HPD's "well known" "failure to adequately train its officers at the time to comply with requests for evidence from the Harris County District Attorney's Office." Doc. #18 at ¶¶62, 97, 99, 102-105. No facts are provided to suggest this policy, or a similar one was not previously in place, or that the City did not act pursuant to this policy with respect to the investigations of Plaintiff.

Plaintiff does allege facts establishing the failure to disclose *Brady* evidence by the City or its

employees. His claims rely on a clear misrepresentation that the Harris County prosecutors delayed providing him two items of evidence before 2022: (1) The recorded interview of Hilda Vasquez for which Plaintiff attaches a transcript by Rev.com stating it was completed in 04/07/2021, proving it was provided long before he claims; and (2) prosecutors' notes from interviews of Darrion Dent that the prosecution conducted in 2022, which did not exist before they were produced in 2022 and had nothing to do with the City. Neither of these items exonerated Plaintiff or resulted in dismissal of charges against him.

Plaintiff's complaint acknowledges that *Brady* disclosures are the prosecution's obligation that become relevant only during a trial and upon conviction. *Beasley*, 576 F.2d at 630 (citations omitted); *Garrett*, 238 F.3d 303. Yet he assigns this responsibility to the City based on a purported "policy of the Harris County District Attorney's Office to immediately request all evidence from HPD, including body worn camera footage and recordings of interviews." *Id.* at ¶71. The disingenuity of these claims are proven by filings in the criminal proceedings identifying evidence and recordings that were timely uploaded by HPD and made available to the prosecutors as early as May 14-15, 2018, which the District Attorney failed to upload to the defense portal. Exhibit 11 at 2, 3, 9, 10, 14, 15, 16, 28-29, 35. Furthermore, Plaintiff was not tried, and admits he received these disclosures before any trial, which satisfies Due Process and *Brady*. *See* infra, §3A.

Plaintiff also cites *General Order 700-09*, regarding photo lineups and identifications, to complain that the detectives violated this policy because they could have recorded the photo lineup and "a more recent photo could have been obtained online." Doc. #18 at ¶¶43-45. Plaintiff did not have a constitutional right to *either* of these options. The complaint provides "more recent" photos of Plaintiff that look the same as that used in the lineup. *Id.* at 11-12. The unfounded claim that Detectives fabricated the witness's identification, were suggestive, or coerced the witness into identifying Plaintiff are implausible given the independent statements by the witness about the scar underneath Plaintiff's eye, first to responding officers,

6

then again to Detectives upon identifying Plaintiff, and for a third time to prosecutors in 2022.[3]  The scar is visible in Plaintiff's booking photo upon arrest.  Doc. #18 at 12.   It is entirely implausible that Detectives knew of the scar or were able to fabricate these statements in their offense report or create a video of Dent independently describing it to Officer Manzano before the Detectives had any suspects for identification. Dent confirmed to prosecutors in 2022 that he had identified Plaintiff.  *Id.*   Dent did not identify anyone in the second photo array including Derrik Welch, strongly undermining the baseless accusation that he was coerced or influenced by Detectives.  Doc. #18-1 at 90-92.  Even assuming Dent had not identified Plaintiff as the second suspect at the San Jacinto Subway robbery, however, that would not alter probable cause for Plaintiff's arrest.  *See* Exhibits 1 and 2.  A complaint cannot overcome the independent intermediary doctrine without addressing ***the entirety*** of the probable cause statements.

These conclusory allegations do not establish an unconstitutional policy of the City in 2017 that was the moving force behind a constitutional violation.  Rather than establish an unconstitutional City policy, the complaint claims the Detectives ***violated*** multiple a number of City policies.   Doc. #18 at ¶46.

**B.** **Plaintiff fails to plausibly establish an unconstitutional City custom, widespread practice, or failure to train or supervise claim.**

Plaintiff does not rely on any official written policy or rule of the City, therefore, to survive a 12(b)(6) motion, he must plead facts to infer that there existed "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."  *Hicks-Fields*, 860 F.3d at 808–09.  Showing a pervasive pattern is a heavy burden.  *Sanchez v. Young County, Tex*., 956 F.3d 785, 793 (5th Cir. 2020).  A pattern of similar prior incidents "requires similarity and specificity;

---

[3] Doc. #18-1 at 154-156; Exhibit 12 at 3:00-5:00 (Officer Manzano's BWC); Doc. #18-1 at 90 ("The witness stated that he was "100% sure" that Jeffery Archangel, as depicted in the photo array, was the "guy that forced me to give him the money." He circled his photograph and initialed next to his circle. The witness also stated to me and Detective Crowder that the suspect had a large scar under his eye at the time of the robbery. The witness pointed out with his hand that the scar was under Archangel's left eye and that in the photo-spread there was no scar visible. Note: At the time, Detective Crowder and I had only seen Archangel's Texas Driver's license photo and did not know that he had a large scar under his left eye.").

'[p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.'" *Fuentes v. Nueces Cty., Tex.*, 689 F. App'x 775, 778 (5th Cir. 2017) (quoting *Peterson*, 588 F.3d at 851 (alteration in original)).   "In addition to similarity and specificity, a pattern must be comprised of 'sufficiently numerous prior incidents' rather than merely isolated instances.'"[4]

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Terrell v. Harris County*, __ F.4 __, No. 23-20281, 2024 U.S. App. LEXIS 20839, *6 (5th Cir. July 9, 2024) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005)). Rather, to establish such liability, a plaintiff must show that: "(1) the [alleged supervisor] failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Id.*  With respect to the third prong, "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action, and for an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Id.*  Additionally, deliberate indifference requires a showing of more than negligence or even gross negligence, and to satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations, and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation. *Winston v. City of Shreveport*, 390 F. App'x 379, 380 (5th Cir. 2010).

The complaint is devoid of any instance of similar alleged constitutional violations to support a widespread custom or practice that can fairly be said to represent an unofficial City policy in context of one of the nation's largest cities and police departments.  *See Davidson v. City of Stafford*, 848 F.3d 384, 396–

---

[4] *Fuentes*, 689 F. App'x at 778 (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)); *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010).

97 (5th Cir. 2017); *Pineda,* 291 F.3d at 252.  Plaintiff identifies the misconduct of Gerald Goines in 2019, and "eight homicide division officers… disciplined for policy violations and deficiencies in investigations" in 2014.  Doc. #18 at ¶95-98.  He admits all these officers were disciplined/terminated by the City and/or charged with multiple felonies when problems were discovered.  One was even publicly called a liar by then-Police Chief Charles McClelland, according to the complaint.  *Id.* at ¶¶96-97. The complaint also identifies problems with the evidence room in 2003 and 2005.  These instances are too few to form any pattern, temporally attenuated and factually dissimilar both from each other and the Plaintiff's complaint.

Even the examples regarding his own experience fail to support Plaintiff's points.  Plaintiff does not specify any training or supervision failure attributable to the City that could have been the moving force behind any alleged constitutional deprivation.  The lack of facts establishing any pervasive pattern of similar constitutional violations resulting from a specifically alleged training or supervision failures is fatal to these theories as well.  Plaintiff has neither identified a supervisor nor deliberate indifference to any obvious constitutional violations that would result from it.  Plaintiff's allegations presume the absence of a policy or insufficiency of training or supervision simply because the Houston Police Department's current general orders were revised in 2019, without any facts establishing such failure was the moving force behind a constitutional violation are grossly insufficient to state a claim against the City.

Plaintiff does not specify any training or supervision failure attributable to the City that could have been the moving force behind any alleged constitutional deprivation.  The lack of facts establishing any pervasive pattern of similar constitutional violations resulting from a specifically alleged training or supervision failures is fatal to these theories as well.  Plaintiff has neither identified a supervisor nor deliberate indifference to any obvious constitutional violations that would result from it.

Plaintiff's allegations presume the absence of a policy or insufficiency of training or supervision based solely on the offense reports for the criminal investigation resulting in his arrest.  A single instance made the basis of this suit which did not involve a constitutional deprivation cannot sustain a claim.

Plaintiff presents no cognizable injury based on the alleged inaccurate summary of a witness statement, delayed disclosure of evidence by the District Attorney's Office – which was not delayed—the failure to record a photo identification, or inadequate investigative techniques.  These were not the sole basis for probable cause for Plaintiff's arrest and subsequent indictments, nor did they result in dismissal of the charges against him due to a missing witness.  "Municipal liability will not attach if the complaining party has suffered no constitutional injury at the hands of a municipal employee."[5]  Plaintiff has not adequately alleged either that he suffered a violation of a constitutional right or that an official policy caused the violation of a constitutional right.  *See Sheriff v. City of Jackson*, No. 3:22-cv-392-TSL-RPM, 2023 U.S. Dist. LEXIS 157214, at *28-29 (S.D. Miss. Sep. 6, 2023 (dismissing similar claims).

### III.    Plaintiff fails to plausibly establish a constitutional violation to support a Section 1983 claim.

To state a claim under 42 U.S.C.S. § 1983, a plaintiff must demonstrate first, a violation of the U.S. Constitution or of federal law; and second, that the violation was committed by someone acting under color of state law.  *O'Dwyer v. Nelson*, 310 F. App'x 741, 742 (5th Cir. 2009).  Because there is no underlying constitutional violation, Plaintiff cannot state a section 1983 claim against the City.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

#### A.    Plaintiff fails to state a cognizable Due Process violation.

##### (1) Plaintiff's claims involve pretrial liberty deprivations which must be analyzed under the Fourth and not the Fourteenth Amendment.

Plaintiff's claim cannot be asserted under the Fourteenth Amendment because it involves pretrial deprivations of liberty that must be analyzed under the Fourth Amendment.  It is well settled that "an unlawful arrest claim must be analyzed under the Fourth Amendment, not the Fourteenth Amendment." *Zimmerman v. Cutle*r, 657 F. App'x 340, 341 (5th Cir. 2016).  A person may have a Fourteenth Amendment

---

[5] *Lock v. Torres*, 694 Fed. App'x. 960 (5th Cir. 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986)) (holding that county was not liable for false arrest under § 1983 where independent-intermediary doctrine barred claims against individual officers such that there was no constitutional violation arising from the officer's actions).

due process claim based on manufactured evidence if "[1] police intentionally fabricate[d] evidence and successfully g[o]t someone falsely charged ... and [2] the Fourth Amendment is unavailing."[6]  If the alleged manufactured evidence leads only to an arrest and not a trial, the plaintiff must seek recovery under the Fourth Amendment because the Fourth Amendment provides protection for pre-adjudication rights and if "a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing th[o]se claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citation omitted).  The right to be arrested with probable cause is protected under the Fourth Amendment, and therefore it cannot be brought as a Fourteenth Amendment due process claim.  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010).

Plaintiff was not subjected to a trial or convicted; he cannot show that the Fourth Amendment would be unavailing to authorize a duplicative Fourteenth Amendment claim; therefore, his claim is limited to the Fourth Amendment.  *See*, *e.g.*, *Guillory v. Dalbour*, No. 2:15-cv-02452, 2016 U.S. Dist. LEXIS 133267, at *14 (W.D. La. 2016).

Alleging that the City "contributed" to the delay in dismissal of charges does not present an actionable injury separate from any arrest or conviction. Doc. #18 at ¶69.  Alleged embarrassment and damage to career prospects as a rapper, without a deprivation of due process to redress that injury, do not support any Fourteenth Amendment deprivation.  *In re Selcraig*, 705 F.2d 789, 791 (5th Cir. 1983) (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976))

### (2) *Brady* **is neither a pretrial remedy nor one that can be violated by an officer who neither tried nor convicted the Plaintiff.**

Plaintiff does not plausibly establish any delayed disclosure of exculpatory evidence by the City or

---

[6] *Cole v. Carson*, 802 F.3d 752, 773 (5th Cir. 2015).  The fabrication must be intentional and must be done by an official. *See Id.* at 767.

its officers, but such a pre-trial delay would not be actionable anyway, because Plaintiff was not tried and convicted.

The Fifth Circuit has stated, "*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir.1978) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)). Therefore, *Brady* "is not a pretrial remedy." *See United States v. Garrett*, 238 F.3d 293, 303 (5th Cir.2000) (Fish, J., concurring) (quoting *United States v. Scott*, 524 F.2d 465, 467 (5th Cir.1975)). Rather, a *Brady* violation becomes a concern for courts only after trial, when courts are able to determine whether a nondisclosure deprived a defendant of a fair trial. *See id.* at 303-04 (citing cases). The Fifth Circuit has also held it is sufficient for the government to disclose *Brady* information to the defendant during its case-in-chief. *See United States v. Neal*, 27 F.3d 1035, 1050 (5th Cir.1994). Lastly, the Fifth Circuit has held that there is no violation of *Giglio* as long as the evidence is disclosed to the defense before the end of trial. *United States v. Davis*, No. CR.A. 01-282, 2003 U.S. Dist. LEXIS 5824, 2003 WL 1825602, at *2 (E.D. La. Apr. 8, 2003)

There is no constitutional right to prompt, early, on-demand, or pre-trial disclosure of *Brady* evidence whatsoever. There is no case "from *any* circuit that premises § 1983 municipal liability on a policymaker's deliberate indifference to a constitutional right that a circuit court has expressly held does not exist—e.g., the defendant's right to be presented with *Brady* material" from police officers rather than state prosecutors who are the only ones authorized by the Texas Constitution to prosecute state criminal laws. *Alvarez v. City of Brownsville,* 904 F.3d 382, 391-92 (5th Cir. 2018) (en banc) (holding the same with respect to the defendant's alleged "right to be presented with *Brady* material before entering a guilty plea). In other words, a Houston police officer cannot violate a defendant's Brady rights because *Brady* only becomes a concern during a trial and following a conviction. Framing these allegations as a general due process violation does not alter the outcome under *Alvarez* for the reasons given above. *Mansfield v. Williamson Cty.*, No. A-18-CV-49-ML, 2020 U.S. Dist. LEXIS 262580, at *14 (W.D. Tex. Mar. 18, 2020)

(rejecting similar allegations following a guilty plea).

### (3) Allegedly deficient investigation techniques or record keeping do not implicate any constitutional right of the Plaintiff's.

The Supreme Court has continually held that a plaintiff must plead that his or her constitutional or statutory deprivation resulted from conduct that was intentional or due to deliberate indifference.[7] Negligent police work does not amount to a cognizable § 1983 claim, even if it results in the wrong person being charged with a crime.

Plaintiff's claim of, at most, negligent transcribing of the suspect's age-range described by a witness, failing to record a photo line, and failing to go "online" to find a more recent photograph of a suspect do not implicate the violation of any right guaranteed by the Constitution. *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (where plaintiff "had no constitutional right to be protected from [a police officer's] merely negligent conclusion that she was the suspect who had sold him the crack cocaine."); *Herrera v. Millsap*, 862 F.2d 1157, 1160 (5th Cir. 1989) (arresting officers were not liable for mistaken arrest where, as a result of negligence, the plaintiff's name was submitted to grand jury instead of that of the suspect); *Vidal v. Sanchez*, No. 1:19-cv-90, 2020 U.S. Dist. LEXIS 160023, at *6 (S.D. Tex. 2020) ("A negligent police investigation does not violate Vidal's constitutional rights, even if it leads to his arrest."); *Shadley v. Grimes*, 405 Fed. App'x 813, 815 (5th Cir. 2010); *Moreno v. City of Progreso, Tex.*, 161 Fed. App'x 371, 373 (5th Cir. 2005) ("The negligent failure to investigate other leads does not violate due process."); *Sanchez v. Swyden*, 139 F.3d 464, 468 (5th Cir. 1998) (the officials "charged with maintaining custody of the accused named in a warrant are not required by the Constitution to perform an error-free investigation of a claim of innocence"); *Torres v. Camacho*, No. EP-20-CV-00149-DCG-ATB, 2021 WL 1911338, 2021 U.S. Dist. LEXIS 90473, at *8 (W.D. Tex. May 12, 2021) (dismissing claims of

---

[7] *Daniels v. Williams*, 474 U.S. 327, 332 (1986) ("To hold that injury caused by [lack of due care] is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.").

improper police investigation), adopted by *Torres v. Camacho*, 2021 U.S. Dist. LEXIS 145622 (W.D. Tex., Aug. 4, 2021).

Plaintiff did not have a constitutional right to a recorded photo lineup or for Detectives to transcribe the entirety of witness statements into their offense reports that was violated. The Plaintiff's current state issued photo identification was both presumptively reliable as a form of identification and looked no different than the Plaintiff's more recent photos. Doc. #18 at 11-12. Both pictures are easily identifiable as the same person, with a shaved head versus short dreadlocks.

### B.    Plaintiff fails to plausibly establish a Fourth Amendment violation.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Where an arrest is made under authority of a properly issued warrant, the arrest is simply *not* a false arrest." *Johnson v. Norcross*, 565 F. App'x 287, 289 (5th Cir. 2014) (quoting *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)) (emphasis added). "[I]f facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994) (overruled on other grounds). This is so even if it is determined the officer acted with malice. *See Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988). The Fifth Circuit has applied the independent-intermediary doctrine even if the intermediary's action occurred after arrest and even if the arrestee was never convicted of any crime. *See Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016).

#### (1)    Plaintiff's arrest pursuant to a valid warrant is simply not a false arrest and barred by the independent intermediary doctrine.

Plaintiff's arrest made under authority of an arrest warrant properly issued by a judge was lawful as a matter of law. *See* Exhibit 3. A properly secured arrest warrant or grand jury indictment will shield a defendant who has committed or initiated a false arrest. *Wilson v. Stroman*, 33 F.4th 202, 205 (5th Cir.

2022). *See also Johnson*, 565 F. App'x at 289.

To overcome the warrant, Plaintiff must establish that both detectives made a "false statement knowingly and intentionally, or with reckless disregard for the truth" and (2) "the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). If probable cause existed for *any* offense, the claim fails. Probable cause for a warrant can be found based on hearsay, information from informants, or circumstantial evidence if the affiant believes or appropriately accepts the information as true.[8] Plaintiff offers two conclusions unsupported by the complaint's factual allegations:

### a. Alleged inaccurate summary of Hilda Vasquez's interview.

Plaintiff misrepresents that Detective Vinogradov entered a wholly inaccurate *summary* of Hilda Vasquez's description of the suspects in his March 11, 2017, supplement, because she described the second suspect as appearing to be aged 18-20 versus 18-25. Doc. #18 at ¶19. This allegation is false based on the complaint's attachments.[9] There is no indication that Detective Vinogradov misrepresented his summary as an official transcript of the interview itself, which he referenced and included in the case file. Doc. #18-1 at 36-37. A mistake about a witness's description does not constitute an intentional material misrepresentation in the warrant application. Irrespectively, whether Vasquez described the suspect as 18-20 or 18-25 was immaterial to probable cause. *See* Exhibit 2 (Capital Murder Complaint); Exhibit 1 (Aggravated Robbery Complaint). "Such discrepancies between a victim's or witness's estimation of a suspect's height and weight have been regularly found to be immaterial." *Sheriff v. City of Jackson*, No. 3:22-cv-392-TSL-RPM, 2023 U.S. Dist. LEXIS 157214, at *16-17 (S.D. Miss. Sep. 6, 2023), citing *Porter*

---

[8] *Jordan*, 687 F. App'x at 413 (citing *Bennett v. City of Grand Prairie*, 883 F.2d 400, 405-06 (5th Cir. 1989); *Shadley v. Grimes*, 405 F. App'x 813, 815 (5th Cir. 2010) (per curiam) (stating that an officer had probable cause when "nothing in [the witness's] demeanor, appearance, or account caused [the officer] to believe or suspect that [the witness] was wrong or lying").

[9] Vasquez described the shooter, who was the taller suspect without a face mask, as "probably like in the 18s, 19s, 20. The other one looked like he was 15, 14." Doc. #18-1 at 103. She described the second suspect as very short with a mask or t-shirt covering his face. *Id.* at 104 ("Yeah. He looked real young, but he had a mask, but he was real short. The other one was tall as my height."). She then said the shooter was taller than her because she had to look up at him. *Id.*

*v. Lear*, 751 Fed. Appx. 422, 430 (5th Cir. 2018) (omission from warrant affidavit of variations in height, skin tone, and age between the witnesses' descriptions and Porter's actual height, skin tone, and age was not "clearly critical" to probable cause finding in light of multiple positive eyewitness identifications); *United States v. Maro*, 272 F.3d 817, 822 (7th Cir. 2001) (holding that omission of significant weight disparity did "not come close to the kind of egregious errors necessary to conduct a *Franks* hearing," let alone establish constitutional violation) (cited in *Porter*); *Wilson v. Russo*, 212 F.3d 781, 791-92 (3rd Cir. 2000) (holding that omission of four-to-seven inch height disparity and witness's failure to identify plaintiff in photo lineup were not material when a credible eyewitness positively identified plaintiff) (cited in *Porter*). Plaintiff had no constitutional right for detectives to transcribe every word into a report or base their conclusions on a single witness's statement rather than their experience and their investigation.[10]

The Detectives were able to judge the suspects' ages by surveillance video from both crime scenes. See Exhibits 1 and 2; Doc. #18-1 at 81-94; 124-125. Surveillance from that robbery shows the suspect matching Plaintiff's appearance, and Hilda Vasquez identified these aggravated robbers as the robbers who murdered her son. Exhibit 11 at 5; Exhibits 1 and 2; Doc. #18-1 at 85-94. Other witnesses and physical evidence linked Plaintiff to the crimes. *Id.* Plaintiff's co-defendant, Derrick Welch, identified Plaintiff from surveillance images. The getaway vehicle with distinctive identifiers was found outside the home shared by Plaintiff and his sister. *See* Exhibits 1 and 2; Doc. #18-1 at 81-94; 124-125. Inside, Detectives found the apparent murder weapon and Plaintiff's driver's license in Plaintiff's living area (according to his sister). Doc. #18-1 at 88; 81-94. Toll records also matched the routes to and from the crime scenes and Plaintiff's residence. *Id.* at 94. Darrion Dent, the complainant from the second San Jacinto Subway robbed within minutes after the capital murder, identified Plaintiff from a 6-photo array. *Id.* at 89-90. In identifying Plaintiff from a lineup, Dent said he was 100% certain of the identification. Dent described to detectives

---

[10] Doc. #18-1 at 38-39 (misrepresenting a bullet list of "PERSONS WANTED" describing Possible suspect 1 and 2 as a "*summary*").

the scar across the taller suspect's cheek which was not visible in the lineup photo.  *Id.*  Detectives had no way of knowing at the time that Plaintiff had a scar across his face.  *Id.*  The booking photos in the amended complaint show the scar visible in the exact area described by Dent.  Doc. #18 at 11-12.  Dent's identification is corroborated by his initial statements to Officer Manzano that the taller, unmasked suspect had a "scar across his face" while pointing underneath his eye, across his cheek.  See Exhibit 12, Manzano BWC at 2:00-5:00.[11]  A sketch artist prepared a composite sketch of the suspect based on Vasquez's descriptions that easily matches Archangel.  Exhibit 15; Doc. #18-1 at 105; Doc. #18 at 11-12 (photographs).

### b. Alleged fabrication of photo-identification based on witness's hesitation or inability to identify Plaintiff five years after the arrest.

Plaintiff complains that prosecutors' notes from conversations with complainant Dent in 2022 "documented his inability to identify Archangel in the photospread," but the notes at most document the witness's reluctance or inability to identify Plaintiff ***five years after the arrest*** at a trial.  Doc. #18 at ¶65; Doc. #18-1 at 154-156.  Dent confirmed to prosecutors in 2022 that he had identified Plaintiff from the photo lineup in 2017 as stated in the probable cause statement.  Doc. #18 at ¶¶55, 56; Doc. #18-1 at 154-156.  Dent's reluctance to testify as an eyewitness against those charged with robbing him at gunpoint is not surprising, especially given the murder of Derrick Welch in a shootout in February 2018.  *Id.* Doc. #1 at ¶29; Exhibit 14.  The notes claiming an inability to identify someone likely referred to the second suspect, whose face was covered by a mask and Dent was unable to identify, as documented by the Detectives' offense report on 3/29/2017.  Doc. #18-1 at 89-90; 154-156.  The notes reiterate Dent's statements about the suspect's scar, (Doc. #18-1 at 154-156), that he had described first to Officer Manzano at the scene, and again to Detectives after identifying Plaintiff from a photo array and noting the absence of the scar in the

---

[11] Plaintiff attached an inaccurate transcription of Officer Manzano's body worn camera recording omitting these statements.  Doc.#18-1 at 129-130.

photo.[12]  The scar is visible in Plaintiff's booking photo upon arrest.  Doc. #18 at 12.  Conclusory claims

that Dent was coerced or influenced by Detectives are also implausible given that he did not identify anyone

in the second photo array including Derrik Welch.  Doc. #18-1 at 90.  Even assuming Dent had not

identified Plaintiff as the second suspect at the San Jacinto Subway robbery, however, that would not alter

probable cause for Plaintiff's arrest.  *See* Exhibits 1 and 2.

### c.   Accomplice's post-arrest purported confession cannot retroactively alter probable cause and is immaterial under Texas law.

Allegations that in "subsequent interviews" after his arrest, Plaintiff produced a recording of his co-

defendant, Derrick Welch, confessing to being "the shooter" cannot retroactively alter probable cause for

Plaintiff's arrest.  Plaintiff does not allege—and the offense reports do not indicate—any such recorded

confession was given to the detectives ***prior*** to Plaintiff's arrest.  Nor would such an allegation, even if true,

defeat probable cause for capital murder or aggravated robbery.  Both aggravated robbers are guilty of any

capital murder that occurs during their commission of a robbery with a deadly weapon, regardless of

whether they personally fired the fatal bullet.  TEX. PEN. CODE §§ 7.01-.04.  The complaint admits the

evidence linked the same suspected to both crimes.  Both Plaintiff and Welch were arrested and charged

for the crimes.  It did not matter which of them was the shooter.

The confession given to Plaintiff's close friend, Kendell Pitchford, was not credible.  Doc. #18-1

at 92-93; Exhibit 13.  There was whispering between Kendell Pitchford and Derrick Welch before the

unnatural confession.  *Id.*, Doc. #18-1 at 85-94.  Kendell was not friends with Welch and said, "that he did

not really know him and that they only said hello when they walked past each other at" Plaintiff's residence.

Doc. #18-1 at 91-92.  Detectives "found it difficult to believe that Derrick would 'confess' to an individual

who he did not know."  *Id.*  Welch did not meet the physical description of the shooter.  Welch's build and

appearance were similar to the second, shorter and younger looking suspect.  The taller suspect and shooter

---

[12] Exhibit 12 at 3:00-5:00; Doc. #18-1 at 90.

looked like the Plaintiff.  Exhibit 13; Doc. #18-1 at 85-94.  Plaintiff omits roughly 40 pages from the unofficial (and unreliable) transcript of Derrick Welch's interview about the recorded confession supplied by Plaintiff after his arrest.  Doc. #18-1 at 237-238 (skips 31 pages of transcript, from 1:13 to 1:41 of the video recorded interview, Exhibit 13).  The omitted portions include Derrick Welch breaking down and explaining that he made the confession because Plaintiff and Kendell Pitchford had threatened to hurt him and everyone in his family if he didn't.  Exhibit 13 at 1:25-1:31; 1:31:30-1:35 (Derrick Welch interview).[13]  Welch was murdered in February of 2018.  Exhibit 14.

Plaintiff's complaint omits the entirety of the probable cause statements by Detectives, (Exhibits 1 and 2), which provided overwhelming support for probable cause even if Dent's identification and Hilda Vasquez's interview summary are disregarded. *Id.  See* also Doc. #18-1 at 14-96, 114-127.  Probable cause for a warrant can be found based on hearsay, information from informants, or circumstantial evidence if the affiant believes or appropriately accepts the information as true. *Jordan v. Brumfield*, 687 F. App'x 408, 413 (5th Cir. 2017) (citing *Bennett v. City of Grand Prairi*e, 883 F.2d 400, 405-06 (5th Cir. 1989); *Shadley v. Grimes*, 405 F. App'x 813, 815 (5th Cir. 2010) (per curiam) (stating that an officer had probable cause when "nothing in [the witness's] demeanor, appearance, or account caused [the officer] to believe or suspect that [the witness] was wrong or lying").  That is why "The *Franks v. Delaware* rule is a narrow one' and []  its narrowness reflects six concerns." *Melton v. Phillips*, 875 F.3d 256, 258 (5th Cir. 2017) (en banc).

### (2) Plaintiff cannot overcome the additional, independent intermediaries that found probable cause after his arrest.

"In considering the actions of multiple independent intermediaries, the Court need only consider

---

[13] See also Doc. #18-1 at 93 ("Derrick then again broke down in tears and said that he had lied to me and Detective Crowder and that it was him in the recording. He said that the confession was staged and that Kendell and Jeffery had threatened Derrick's life if he did not do the recording. He also said Jeffery had told his mother on 3/24/2017 that he had dumped the hoodies by a gas station or a Walgreens on Southmore Boulevard and HWY 288. Derrick said that he was scared to talk to me and Crowder about the confession because Jeffery and Kendell threatened to kill Derrick and his family.").

whether one act was sufficient to break the casual chain and immunize [the defendant]."[14]

A judge found probable cause for aggravated robbery with a deadly weapon and issued a warrant for Plaintiff's arrest on April 7, 2017.  Exhibit 6 at 4.  Plaintiff was arrested on 4/8/2017.  *Id.* at 3.  A judge held a hearing and found probable cause for his detention on 4/9/2017.  Exhibit 7.  A judge found probable cause for capital murder and issued an arrest warrant on 5/4/2017.  Exhibits 3, 7, 8, 9.  A grand jury then indicted Plaintiff for both aggravated robbery with a deadly weapon and capital murder on 8/1/2017.  *See* Exhibits 4 and 5.  Plaintiff alleges no facts whatsoever to overcome these multiple independent intermediaries whose actions broke the chain of causation, defeating any claim.  *Wilson v. Stroman*, 33 F.4th 202, 205 (5th Cir. 2022).  Plaintiff alleges no facts whatsoever to overcome the separate probable cause determinations by these multiple intermediaries, and therefore cannot state a claim.

## IV.    Punitive Damages are not available against the City.

"[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."[15]  Plaintiff's punitive damages claim must be dismissed.

### CONCLUSION AND PRAYER

Defendant, the City of Houston, respectfully prays that the Honorable Court grant this motion and dismiss all the Plaintiff's claims with prejudice and grant all other relief to which the Defendant may be justly entitled.

Respectfully submitted,

**ARTURO G. MICHEL**
**City Attorney**

---

[14] *Poullard v. Gateway Buick GMC LLC*, 2021 U.S. Dist. LEXIS 177005, at *6 (N.D. Tex. Sept. 17, 2021) (citing *Buehler v. City of Austin/Austin Police Dep't*, No. A-13-CV-1100-ML, 2015 U.S. Dist. LEXIS 20878, at *13 n.5 (W.D. Tex. Feb. 20, 2015) ("In light of the grand jury's independent role in finding probable cause, the Court ... declines to address Defendants' contention that the magistrate's warrants insulate the Officers by breaking the chain of causation. Similarly, the Court declines to address Buehler's contention that the arrest warrants did not insulate the Officers because the Officers lied or omitted material facts in the warrant affidavits."), *aff'd*, 824 F.3d 548 (5th Cir. 2016)).

[15] *City of Newport* v. *Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Thomas* v. *City of New Orleans,* 687 F.2d 80, 84 n.2 (1982) (no award of punitive damages could be awarded against the City of New Orleans itself versus individual defendants)

CHRISTY MARTIN
Chief, Torts/Civil Rights Section

By:    */s/ Melissa Azadeh*
MELISSA AZADEH
Senior Assistant City Attorney
*Attorney in Charge*
TBN 24064851
FBN 1090186
Tel. (832) 393-6270
Melissa.Azadeh@houstontx.gov
City of Houston Legal Department
P.O. Box 368
Houston, Texas 77001-0368
Fax (832) 393-6259
**ATTORNEYS FOR DEFENDANTS CITY
OF HOUSTON, DAVID J. CROWDER,
AND ALEXANDER S. VINOGRADOV**

## VERIFICATION

I hereby verify, under penalty of perjury, that the exhibits attached to this motion are true and correct copies of the public and judicial records they are represented to be, with redactions.

*/s/ Melissa Azadeh*
Melissa Azadeh

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of December 2024, a true and correct copy of the foregoing document, and any attachments, were delivered to all opposing counsel(s) by electronic filing of same in accordance with the District's ECF service rules, and alternatively via e-mail and/or facsimile transmission, to:

F. Andino Reynal
Reynal Law Firm, PC
917 Franklin, 6th Floor
Houston, Texas 77002
Phone: 713.228.5900
Facsimile: (713) 820-0681

areynal@frlaw.us

*/s/ Melissa Azadeh*
Melissa Azadeh