United States District Court
Southern District of Texas
**ENTERED**
August 29, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Jeffery Archangel | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action 4:24-cv-03436 |
| | § | |
| City of Houston, Texas; | § | |
| David J. Crowder; and | § | |
| Alexander S. Vinogradov, | § | |
| *Defendants.* | § | |

## MEMORANDUM AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). Pending before the court are Defendant City of Houston's Motion to Dismiss, ECF No. 25, and Defendants David J. Crowder and Alexander S. Vinogradov's Motion to Dismiss, ECF No. 26. The undersigned recommends that both motions be **GRANTED.**

### 1. Background

Plaintiff Jeffrey Archangel is an aspiring rapper who alleges that his promising career was derailed when Houston Police Department detectives, David J. Crowder (Crowder) and Alexander S. Vinogradov (Vinogradov), falsely arrested him for robbery and murder. Archangel alleges that Vinogradov and Crowder presented false information in probable cause affidavits to secure his arrest for the crimes. The following facts come from Archangel's First Amended Complaint and the exhibits attached thereto.

On February 22, 2017, a robber shot and killed store clerk Javier Flores at a Subway restaurant in Houston, Texas. ECF No. 18 at 4. Archangel alleges that Detectives Crowder and Vinogradov responded to the scene; conducted an interview of

Flores' mother, Hilda Vasquez; and wrote the original offense report documenting the incident. *Id*. In the interview, Vasquez informed Vinogradov that there were two robbers involved. *Id*. The robber who shot her son was somewhere between 5' 06"to 5' 08" in height and was around age "18s, 19s, 20." ECF No. 18-1 at 103–104. The second robber was shorter and younger than the shooter, around 5' 04" in height and 14 or 15 years old. *Id*. at 104. Vasquez informed Vinogradov that she was holding a spray bottle when the robbers entered the restaurant, but she could not recall if she sprayed the robbers or not. *Id*. at 100–101.

Archangel alleges that Vinogradov entered a "wholly inaccurate summary" of Vasquez's description of the two suspects in his March 11, 2017 supplement to the original offense report. ECF No. 18 at 5. Vinogradov stated in the supplement that the shooter was no older than 25 years of age. ECF No. 18 at 5. Vinogradov also stated that the second, younger robber was no more than 5' 08" in height even though Vasquez stated that the second robber was approximately 5' 04". *Id*. Vinogradov referenced Vasquez's interview in his supplement and attached it. ECF No. 18-1 at 36–37.

Also on February 22, 2017, shortly after the Flores murder, the suspects committed another robbery at a nearby Subway on San Jacinto Street. ECF No. 18 at 6; ECF No. 18-1 at 114–16. The responding officer, Officer Manzano, interviewed store clerk Darrion Dent, who was working at the Subway when the two suspects robbed him at gunpoint. ECF No. 18 at 6. Dent described the robbers as juveniles aged 16 to 17. *Id*. Dent described one suspect as around 4' 11" in height. Dent described the other suspect as around 5' 05" or 5' 06" in height. *Id*.

On March 24, 2017, Vinogradov and Crowder reviewed Crime Stoppers tips on the Flores murder case. ECF No. 18 at 8. An anonymous tip stated that the shooter in the Flores murder

case was named Derrick Welch Jr. *Id*. The tip also identified the second robber by his nickname of "Little Joe." *Id*. According to Archangel, Welch died in February 2018 and was only 68 inches tall and weighed 152 pounds. *Id*. Archangel also alleges that "Little Joe" was likely Welch's friend, Joe Nathan Vann, who was 5' 06" and weighed 120 pounds in 2018 when Vann was arrested on a separate felony offense. Archangel alleges that, in contrast, he was 25 years old at the time of the offenses and was much taller and heavier than the two suspects. *Id*.

Vinogradov and Crowder investigated the tip and determined that Welch had been dating a woman named Eryka Valentine—Archangel's sister. ECF No. 18 at 9. On March 24, 2017, after determining where Valentine resided, Vinogradov ordered a patrol officer to drive to Valentine's apartment complex to look for the Mazda Protégé car used in the February 2017 offenses. *Id*. The vehicle was located at the residence, and the apartment manager informed the officer that the vehicle belonged to the residents in Valentine's apartment. *Id*. Crowder, Vinogradov, and other HPD officers entered the apartment in which Valentine stayed and encountered Welch. *Id*. The officers found a handgun sitting on a table in the apartment's living room. *Id*. Subsequent testing linked the handgun to the ballistics evidence recovered at the Flores murder scene. *Id*. at 10. The officers also found a Texas identification card belonging to Archangel on a blow-up mattress next to the living room table. *Id*. During an interview with HPD officers, Welch denied ownership of the handgun and stated that the composite sketch of the shooter at the Flores murder scene looked like Archangel, though he was not entirely sure. *Id*. at 9–10.

Vinogradov and Crowder prepared a photospread for Dent, the store clerk at the San Jacinto Subway, to view and identify the persons involved in the offenses. Archangel alleges that

Vinogradov and Crowder violated several identification procedures. Archangel alleges that, when preparing a photospread for Dent to review, Vinogradov and Crowder relied on a six-year-old picture of Archangel, when his physical appearance and age were more consistent with Vasquez's and Dent's descriptions of the suspects. ECF No. 19 at 11. Archangel alleges that relying on an old photograph of Archangel was contrary to HPD policies which require the use of a "reasonably contemporary" photograph in a photospread. *Id.* at 10–11. Archangel alleges that a recent photograph of him could have been obtained online. *Id.* at 11. Archangel also alleges that the detectives could have included him in a live or video lineup that witnesses could view. *Id.* Archangel maintains that his appearance from 2017 drastically differs from his appearance in 2011 which was captured in the identification card that Vinogradov and Crowder relied on for the photospread. *Id.* at 11–12.

On March 29, 2017, Vinogradov and Crowder showed Dent the photospread. *Id.* at 12. Archangel alleges that because Vinogradov and Crowder did not videotape or record Dent's viewing of the photospread, they violated HPD policies requiring the videotaping or recording of this procedure. *Id.* Archangel also alleges that because Vinogradov and Crowder presented the photospread to Dent, they violated HPD policies requiring that the photospread procedure be conducted in a blind manner, i.e., conducted by someone not currently investigating the underlying offense or knowledgeable about the suspects. *Id.*

Vinogradov's report states that Dent made a positive identification of Archangel from the photospread and reported that Dent was "100% sure" that he had identified the correct person. ECF No. 18-1 at 90. Dent described the shooter as having a large scar under his left eye at the time of the robbery. *Id.* Dent also pointed out that there was no scar visible in the photograph of

4

Archangel in the photospread. *Id*. Vinogradov's report goes on to state that, at the time that Dent described the scar, neither Vinogradov nor Crowder knew that Archangel had a scar under his eye. *Id*. Archangel's 2017 booking photographs show a scar under his eye. ECF No. 18 at 12. That is, Archangel had a scar under his eye matching Dent's description, and Dent identified Archangel as "the guy that forced me to give him the money." ECF No. 18-1 at 90.

Archangel alleges that Vinogradov misrepresented the results of Dent's viewing of the photospread. ECF No. 18 at 13. Archangel alleges that Dent never made a positive identification of him from the photospread and further alleges that this alleged discrepancy was not disclosed to Archangel until 2022, when he received notes from Harris County prosecutors' March and September 2022 interviews with Dent. *Id*. According to prosecutor notes that were released to Archangel in September 2022, Dent was unable to identify any of the suspects when prosecutors asked him to in March and September 2022. *Id*. Dent said that he "doesn't remember what [the robber] looked like," and that he "picked someone at random." ECF No. 18-1 at 154. Dent later clarified that it was "an over-exaggeration" to claim that he picked someone at random. *Id*. at 155. The notes further reflect that Dent vaguely recalled telling Vinogradov and Crowder about a scar that the shooter had. *Id*. at 154. Dent said he doesn't remember what led him to pick Archangel that day and that it has "been years." *Id*. at 155. The notes do not indicate that Dent did not identify Archangel during the 2017 photospread. Dent confirmed that he did choose Archangel from the photospread in 2017. *Id*.

On April 5, 2017, the Harris County District Attorney's Office accepted aggravated robbery charges against Archangel based on Vinogradov's representations about probable cause. ECF No. 18 at 14. Archangel accuses Vinogradov of misrepresenting in

his affidavit critical facts regarding probable cause, most notably by stating that the photospread procedure was conducted in a blinded manner and that Dent positively identified Archangel. *Id*.; *see also* ECF No. 18-1 at 4. On April 8, 2017, police detained and interviewed Archangel. ECF No. 18 at 14. Archangel alleges that he denied involvement in both offenses and stated that Welch and another unknown person committed the offenses. *Id*. Archangel also alleges that he denied that the handgun found at the apartment belonged to him. Archangel was arrested and booked into the Harris County Jail. *Id*.

On May 4, 2017, the Harris County District Attorney's Office accepted capital murder charges against Archangel based on Crowder's probable cause statement. ECF No. 18 at 15; ECF No. 18-1 at 7. Archangel alleges that Crowder's probable cause affidavit was "riddled with inaccuracies and omissions tailored to create probable cause." ECF No. 18 at 15. For example, Archangel states that rather than including Vasquez's full description of the suspects, Crowder instead merely wrote that "Vasquez described the two suspects as black males wearing hoodies and that one of the suspects wore a mask." *Id*. at 15 (citing ECF No. 18-1 at 7). Archangel also alleges that Crowder falsely stated that Dent identified Archangel as one of the suspects. *Id*. (citing ECF No. 18-1 at 7).

Crowder included additional information in his probable cause affidavit. Crowder noted that he observed the suspects on video and saw them park the Mazda Protégé across the street before the robbery. ECF No. 18-1 at 7. Crowder noted that the Mazda Protégé was parked at the apartment complex where Valentine—Welch's then-girlfriend and Archangel's sister—lived. *Id*. at 8. Crowder described finding the handgun used at the murder scene in the apartment. *Id*. Crowder also noted that Welch

informed him that Archangel had purchased the gun and threatened to kill Welch if Welch talked to police. *Id*.

On May 5, 2017, Archangel surrendered himself to law enforcement. ECF No. 18 at 15. Archangel alleges that he continued to deny involvement in the offenses. *Id*. at 15. Archangel alleges that he informed Vinogradov and Crowder that on April 9, 2017—the day after Archangel was initially detained and interviewed by HPD officers—Archangel's friend, Kendell Pitchford, recorded Welch confessing that he, rather than Archangel, was the shooter in the Flores murder case. *Id*. at 16; ECF No. 18-1 at 92. Vinogradov and Crowder then requested that Pitchford come to the police station so that they could review the recording on his phone. *Id*. Pitchford met with the detectives and provided them a copy of the April 2017 recorded confession. *Id*. Welch was recorded saying to Pitchford that Archangel had nothing to do with the offenses. *Id*; *see also* ECF No. 18-1 at 182. Archangel alleges that Vinogradov provided a false statement in his offense report, which stated that "at no time in the confession did Kendall [sic] speak to Derrick[.]" ECF No. 18 at 17; ECF No. 18-1 at 92.

Archangel alleges that Welch admitted to Vinogradov and Crowder that he was the person speaking on the recording. ECF No. 18-1 at 17. He claimed, however, that Archangel threatened him into making the recording. *Id*. Archangel alleges that Vinogradov and Crowder acknowledged that the statements made by Welch contained specifics about what happened at the Flores murder crime scene, and contained information that "only somebody [who] was there would know." *Id.* (citing Exhibit N).

Archangel finally alleges that the City of Houston injured him because of its failure to timely release evidence, including

*Brady*[1] material. ECF No. 18 at 18. For example, Archangel alleges that the offense report "reflects a pattern of late supplementation" by Vinogradov regarding when he added important information about evidence and investigative steps taken. *Id.* Archangel alleges that the Detectives did not update the relevant offense report with relevant information for several months. *Id.* Archangel also alleges that Vinogradov never updated the offense report with the fact that Welch's mother was an HPD informant. *Id.*

On September 16, 2022, five years after being initially arrested and detained, the Harris County District Attorney's Office dismissed the charges against Archangel. ECF No. 18-1 at 11. Archangel alleges that the Harris County District Attorney's Office concealed the "true basis for dismissal" and instead stated that the case was dismissed because of a missing witness. ECF No. 18 at 19.

On September 13, 2024, Archangel sued the City of Houston and detectives Vinogradov and Crowder. ECF No. 1. Archangel amended his complaint on November 25, 2024. ECF No. 18. He asserts a Fourth Amendment claim against both detectives. *Id.* He also asserts two *Monell*[2] claims against the City of Houston: a policy, practice, and custom claim and a supervisory liability claim. *Id.* All defendants filed motions to dismiss Archangel's claims against them. ECF Nos. 25, 26.

### 2. *Legal Standard*

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Generally, the court is

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).
[2] *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978).

constrained to the "four corners of the complaint" to determine whether the plaintiff has stated a claim. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011); *see also Loofbourrow v. Comm'r*, 208 F. Supp. 2d 698, 708 (S.D. Tex. 2002) ("[T]he court may not look beyond the four corners of plaintiff's pleadings.").

Under Rule 12(b)(6), a complaint that does not allege "enough facts to state a claim to relief that is plausible on its face" should be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On the other hand, "[r]egardless of how well-pleaded the factual allegations may be, they must demonstrate that the party is entitled to relief under a valid theory." *Langen v. Sanchez Oil & Gas Corp.*, No. CV 4:18-2840, 2019 WL 1674348, at *3 (S.D. Tex. Apr. 17, 2019). While a complaint does not require detailed factual allegations, a plaintiff must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. "A plaintiff need only plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "[A] well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]" *Id.* at 556.

"The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," and "drawing all reasonable inferences in that party's favor." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). Only statements of *fact* are to be taken as true. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations are "disentitled . . . to the presumption of truth." *Iqbal*, 566 U.S. at 681. Thus, the court, in

reviewing the plaintiff's complaint, may neither "accept conclusory allegations" nor "strain to find inferences favorable to the plaintiffs." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

### 3. Analysis

#### A. Statute of Limitations

Defendants argue that the statute of limitations bars Archangel's claims against them. In Texas, the statute of limitations for a suit under 42 U.S.C. § 1983 is two years. *Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018). "[F]ederal courts look to state's statute of limitations for personal-injury torts to decide when § 1983 claims toll." *Id.* But the accrual date of a § 1983 cause of action is a question of federal law. *Id.*

When Archangel's 1983 claim accrued "depends on which common-law tort action is analogous to his claim, false arrest . . . or malicious prosecution." *Brown v. City of Houston*, 297 F. Supp. 3d 748, 760 (S.D. Tex. 2017). Under § 1983, the statute of limitations for a Fourth Amendment false arrest claim begins to run at the time the claimant becomes detained. *Wallace v. Kato*, 549 U.S. 384, 397 (2007). But where a plaintiff alleges that he was (1) "arrested pursuant to a warrant, (2) the warrant issued through the normal legal process, and (3) the warrant application contained 'numerous material omissions and misstatements[,]'" the claim is best analogized to common law malicious prosecution, which accrues when criminal proceedings end in plaintiff's favor. *Fusilier v. Zaunbrecher*, 806 F. App'x 280, 282–283 (5th Cir. 2020) (citing *Wallace*, 549 U.S. at 389–90).

In April 2017, Archangel was arrested and booked into the Harris County Jail. ECF No. 18 at 14. The Harris County District Attorney's Office dismissed the charges against Archangel on September 16, 2022. *Id.* at 3. Archangel filed this suit September 13, 2024. ECF No. 1.

10

Archangel alleges causes of action for "Unlawful Search and Seizure – No Probable Cause." ECF No. 18 at 20–21. He also alleges that he was arrested pursuant to a warrant, which was issued through normal legal process, but that the warrant application included numerous misrepresentations and omissions. *Id.* Thus, Archangel's claim is best analogized to a malicious prosecution claim for the purpose of determining when Archangel's claim accrued.

Accordingly, Archangel's claim accrued when the criminal proceedings ended in his favor, on September 16, 2022. Archangel timely brought his claims less than two years later, on September 13, 2024. His claims are not time barred.

### B. Claims against Detectives Vinogradov and Crowder

Section 1983 provides redress for those who have been injured or deprived of their rights under color of state law. 42 U.S.C. § 1983; *Moody v. Farrell*, 868 F.3d 348, 351 (5th Cir. 2017). Archangel alleges that the detectives violated his Fourth Amendment right to be free from arrest without probable cause. ECF No. 18 at 20–23. "A false arrest occurs, and an individual's Fourth Amendment rights are violated, when an officer conducts an arrest without probable cause." *Scott v. City of Mandeville*, 69 F.4th 249, 255 (5th Cir. 2023).

The detectives argue that Archangel's claims against them should be dismissed based on qualified immunity. ECF No. 28. State officials are entitled to qualified immunity unless (1) the evidence demonstrates that the official's conduct violated a statutory or constitutional right and (2) that right was "clearly established" at the time of the violation. *McVae v. Perez*, 120 F.4th 487, 492 (5th Cir. 2024). Courts "can analyze the prongs in either order or resolve the case on a single prong." *Perry v. Mendoza*, 83 F.4th 313, 317 (5th Cir. 2023).

At the motion to dismiss stage, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020). Thus, the court must consider whether Archangel pleaded specific facts allowing the court to draw the reasonable inference that Vinogradov and Crowder violated Archangel's Fourth Amendment right to be free from arrest without probable cause.

In the false arrest context, "[a] plaintiff must clear a significant hurdle to defeat qualified immunity." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Thompson v. Hammond City*, No. 20-30056, 2023 WL 155412, at *2 (5th Cir. Jan. 11, 2023) (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)). Analyzing probable cause requires the court to consider whether, under the totality of the circumstances, there is a "fair probability" that a crime occurred. *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999). A "fair probability" does not mean that a reasonable official would have thought it more likely than not that the defendant committed a felony. *Id.* A fair probability must be more than a bare suspicion, but less than a preponderance of the evidence. *Id.*

When an arrest is made pursuant to a properly issued warrant, the arrest is not a false arrest. *Johnson v. Norcross*, 565 F. App'x 287, 289 (5th Cir. 2014) (quoting *Smith v. Gonzalez*, 670 F.2d 522, 526 (5th Cir. 1982)). But the intentional or reckless omission of material facts from a warrant application violates the

12

Fourth Amendment if the omission was "clearly critical" to a finding of probable cause. *Porter v. Lear*, 751 F. App'x 422, 429 (5th Cir. 2018).

"An officer is due qualified immunity, 'even if he did not have probable cause to arrest a suspect,' so long as 'a reasonable person in his position would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law.'" *Perry*, 83 F.4th at 317; *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009). "Thus, plaintiffs must allege facts permitting an inference that defendants lacked arguable (that is, reasonable but mistaken) probable cause for the arrests." *Club Retro*, 568 F.3d at 207.

With these principles in mind, the court finds that Archangel has not met his burden. Archangel argues that Vinogradov and Crowder's probable cause affidavits were demonstrably and materially false because "(1) the photo spread was not administered in a blinded manner, (2) Darrion Dent did not positively identify Jeffery Archangel as one of the robbers, and (3) aside from both robbery suspects being African American, it was impossible to say whether Jeffery Archangel had similar facial features to the suspects depicted in the video." ECF No. 28 at 5. Archangel also argues that Crowder's affidavit omitted Dent and Vasquez's descriptions of the robbers' heights, age, build, and tattoos. *Id.* Archangel alleges that there was no probable cause, and that no warrant would have been issued but for the detectives' misrepresentations. ECF No. 18 at 20–23.

Defendant detectives argue that a "mistake about a witness's description does not constitute an intentional material misrepresentation in the warrant application[,]" and that "Plaintiff had no constitutional right for detectives to transcribe every word into a report or base their conclusions on a single

witness's statement rather than their experience and their investigation." ECF No. 26 at 10–11. The court agrees.

The court looks first to the facts and circumstances within the detectives' knowledge at the time of the arrest to determine whether a reasonable officer could conclude that there was a fair probability that Archangel committed the offense. *See Thompson*, 2023 WL 155412, at *3.

Although Vasquez's description did not completely line up with Archangel's height and age, Vinogradov and Crowder were able to view the perpetrators and judge their ages on surveillance footage from the second Subway robbery. ECF No. 18-1 at 86, 124. The detectives also saw a composite sketch prepared by a sketch artist. Archangel's co-defendant, Welch, implicated Archangel and stated that Archangel looked like the person in the composite sketch. *Id.* at 89–91. The Mazda Protégé used at the scene of the crimes was located at the apartment complex where Archangel resided. *Id.* at 86–89. The detectives found the murder weapon and Archangel's identification card inside the apartment in which Archangel resided. *Id.* As shown in the booking photographs taken in 2017, Archangel also had a scar under his eye similar to the one Dent described on the shooter. *Id.* at 90.

The court also notes that, while Vinogradov's affidavit does state that the photospread was conducted in a blinded manner, Crowder's later affidavit does not. ECF No. 18-1 at 8. It states that Crowder himself showed the photo array to Dent. *Id.*

Archangel's allegation that "Dent never made a positive identification of Jeffery Archangel from the photospread" is unsupported by specific facts. Archangel's allegations, and the documents that he attaches to his complaint, show that Dent positively identified Archangel in the photospread in March 2017. Dent described a scar on the perpetrator's face even though there was no scar in the photo in the lineup. ECF No. 18-1 at 89–90. The

detectives did not know that Archangel had a scar under his eye at the time that Dent described the scar to them and identified Archangel in the photospread. *Id.* at 90. Then, in 2022, five years after the robbery, Dent stated that in 2017 he picked someone at random from the photospread and he never saw the robber's face. *Id.* at 154. Dent remembered telling the detectives that the perpetrator had a scar. *Id.* A week later, Dent clarified that he chose the closest person to the robber in the photospread and that he did not remember what led him to pick that person when initially shown the photospread. *Id.* at 155. Dent's 2022 interviews at most establish that he could not recall (or was reluctant to say), *in 2022*, why he identified Archangel. This says nothing about whether Dent, *in 2017*, positively identified Archangel as the shooter. In fact, Dent affirmed in 2022 that he did identify Archangel from the photospread in 2017.

The recorded statement in which Welch confessed to being the shooter does not change the analysis. The documents attached to Archangel's motion show that on May 5, 2017, Archangel gave the detectives a voice recording wherein Welch confessed that he was the shooter. ECF No. 18-1 at 92. Vinogradov's report states "Detective Crowder and I found it difficult to believe that [Welch] would 'confess' to an individual who he did not know." *Id.* The detectives made judgments based on all the circumstances and apparently did not believe that the confession was genuine. These facts do not indicate that the detectives' judgment was unreasonable or that a constitutional violation occurred.

Archangel has not alleged facts permitting an inference that defendants lacked arguable (that is, reasonable even if mistaken) probable cause for the arrest. The detectives' affidavits were not a verbatim transcript of the witness statements. They were made with an understanding of all the facts. Based on the allegations and the facts and circumstances within the detectives' knowledge

at the time of the arrest, the court finds that a reasonable detective could conclude that there was a fair probability that Archangel committed the offense. Thus, there was probable cause to support Archangel's arrest, and there was no Fourth Amendment violation.

Archangel's remaining arguments are also without merit. Archangel's argument regarding "a wholly inaccurate summary of Vasquez's descriptions" in offense reports, ECF No. 18 at 4, is unpersuasive. An offense report is not a sworn probable cause affidavit. Archangel has not pleaded specific facts showing that these misrepresentations in *offense reports* were used to determine whether there was probable cause for his arrest or that the reports were material to a finding of probable cause. *See Porter*, 751 F. App'x at 430. In any event, it is not clear that an inaccurate height and age description in the detectives' interview summaries violated Archangel's rights. Facts outside the height and weight descriptions pointed to Archangel as the perpetrator.

Further with respect to the offense reports, independent intermediaries also break the chain of causation. If facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation and insulates the initiating party. *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016). This is so even if the initiating officer acts with malice. *Id.* The detectives' affidavits here are a fair summary of the facts that they had by then uncovered. The deviations between the witness statements, the offense reports, and the final affidavits were not critical to probable cause and do not undermine the other facts that did point to probable cause.

Archangel has also not plausibly alleged that the detectives' failure to fully comply with internal departmental policies was

material to the finding of probable cause or violated Archangel's constitutional rights. Even if mistakes were made, there is no evidence that any mistake led to a constitutional violation. *See, e.g.*, *Vidal v. Sanchez*, No. 19-CV-90, 2020 WL 5217410, at *3 (S.D. Tex. Aug. 5, 2020) ("A negligent police investigation does not violate [plaintiff's] constitutional rights, even if it leads to his arrest.") (citing *Herrera v. Millsap*, 862 F.2d 1157 (5th Cir. 1989)), *R. & R. adopted*, 2020 WL 5210869 (S.D. Tex. Sept. 1, 2020).

Accordingly, as the court stated above, Archangel has not alleged facts permitting an inference that defendants lacked arguable probable cause. Thus, there was no Fourth Amendment violation, and the detectives are entitled to qualified immunity. Archangel's false arrest claims against Vinogradov and Crowder should be **DISMISSED**.

To the extent that Archangel asserts claims against Vinogradov and Crowder for failing turn over exculpatory information, those claims should also be dismissed. ECF No. 18 at 20–23. Archangel argues that he has asserted a valid 42 U.S.C. § 1983 *Brady* claim against the detectives. However, "*Brady* 'is not a pretrial remedy.'" *Phillips v. Whittington*, 497 F. Supp. 3d 122, 159 (W.D. La. 2020) (quoting *United States v. Garrett*, 238 F.3d 293, 303 (5th Cir. 2000)). A "*Brady* violation becomes a concern for courts only after trial, when courts are able to determine whether a nondisclosure deprived a defendant of a fair trial." *Garrett*, 238 F.3d at 303–304.

There was no trial here. ECF No. 18-1 at 11. The case against Archangel was dismissed. *Id*. Archangel has cited no case that establishes that *Brady* extends to pretrial failures or delays in turning over exculpatory evidence. ECF No. 28. As such, Vinogradov and Crowder did not violate any clearly established constitutional right in their alleged failure to timely turn over

alleged exculpatory evidence in the absence of any trial. As such, Archangel's *Brady* claims should be **DISMISSED**.

### C. Claims Against the City of Houston

Archangel asserts two municipal liability claims against the City of Houston under 42 U.S.C. § 1983. The first is a policy, practice, or custom claim based on HPD's alleged history of deficient investigative practices and failure to fulfill *Brady* obligations. ECF No. 18 at 23–27. The second is a supervisory liability claim based on the City of Houston's failure to adequately train and supervise Vinogradov, Crowder, and other City of Houston employees. *Id.* at 27.

To prevail on a *Monell* claim, a plaintiff must establish (1) an official policy or custom; (2) the policymaker of that policy or custom; and (3) a constitutional violation that the policy or custom was the "moving force" behind. *Moore v. LaSalle Mgmt. Co., L.L.C.*, 41 F.4th 493, 509 (5th Cir. 2022). For Archangel to prevail on his *Monell* claims, he must show that he suffered a constitutional violation. *Id.* The court has already found that Archangel did not allege facts supporting any constitutional violation. The undisputed facts in the probable cause affidavits supported probable cause. Accordingly, the court recommends that Archangel's claims against the City of Houston be **DISMISSED**.

### 4. Conclusion

The court recommends that Defendant City of Houston's Motion to Dismiss, ECF No. 25, and Defendants David J. Crowder and Alexander S. Vinogradov's Motion to Dismiss, ECF No. 26, be **GRANTED** and Archangel's claims be **DISMISSED**.

The parties have ***fourteen*** days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72. Responses to objections, if any, are due ***seven*** days thereafter. Failure to timely file objections will preclude appellate review of factual findings or

legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on August  29 , 2025.

_____

Peter Bray
United States Magistrate Judge